## DUMKA v QUADERER

Docket No. 81366. Submitted June 12, 1985, at Lansing. Decided April 21, 1986. Leave to appeal denied, 426 Mich —.

Allen Dumka, John E. Quaderer and others paid for their admission into a roller-skating rink operated by Bonaventure Skating Center, Inc. Quaderer had witnessed Allen Dumka ingest quaaludes and alcohol before they were admitted into the rink. Employees of the rink ejected Allen Dumka from the premises. Quaderer and others helped the obviously intoxicated Allen Dumka exit from the rink and get into a car, which Quaderer drove and parked at a location three hundred feet from the premises of Bonaventure Skating Center, Inc. Quaderer left Allen Dumka asleep or unconscious in the back seat of the car and returned to the rink. Quaderer and other companions did not find Allen Dumka in the car when they returned after leaving the rink. The following day, Quaderer and another man found Allen Dumka's body lying face down in the snow near the location where the car was parked on the previous night. Laverne Dumka, as personal representative of the estate of the decedent, filed suit in Oakland Circuit Court against Quaderer and Bonaventure Skating Center, Inc., alleging negligence. The circuit court, Francis X. O'Brien, J., granted summary judgment in favor of defendant Bonaventure Skating Center, Inc., after ruling that plaintiff had failed to state a claim upon which relief could be granted. Plaintiff appealed. *Held:*

1. Defendant Bonaventure, as a business invitor, owed the decedent and other invitees the duty to exercise ordinary care and prudence to keep its premises reasonably safe while the decedent and other invitees were on the premises. The scope and extent of this duty did not encompass defendant after he left the premises.

2. Defendant Bonaventure owed a duty to the decedent to avoid placing him in a position of greater peril. However, no breach of this duty was established.

Affirmed.

REFERENCES

Am Jur 2d, Negligence §§ 26, 38, 63, 128, 129, 196, 462-473.

Liability to adult social guest injured otherwise than by condition of premises. 38 ALR4th 200.

1. Negligence — Actions.

   A plaintiff in a negligence action must provide proof on each of the following elements: (1) that the defendant owed a duty to the plaintiff; (2) that the defendant violated that duty; (3) that the defendant's breach of duty was the proximate cause of the damages suffered by the plaintiff; and (4) that the plaintiff did, in fact, suffer damages.

2. Negligence — Duty — Question of Law.

   The determination in an action for negligence of whether a legal duty exists is essentially a legal question for the court to decide; a legal duty is an obligation recognized by law which requires an actor to conform to a certain standard of conduct for the protection of others against unreasonable risk.

3. Negligence — Duty — Social Companions.

   Social companions engaged in a common undertaking assume a special relationship which creates an affirmative duty of one to render assistance to another in peril if he can do so without endangering himself.

4. Negligence — Duty — Business Invitees.

   The general rule in Michigan regarding the duty of a business establishment to its invitees is that when it invites others onto its premises it must exercise ordinary care and prudence to keep the premises reasonably safe; this duty does not extend beyond the premises in a situation where the resultant injury is not based on the fault of the business invitor in maintaining its premises.

5. Negligence — Duty — Assistance.

   Every person has a duty to avoid any affirmative acts which may make a situation worse for another in distress; if an individual attempts to aid an injured person, a duty arises which requires the individual to act as a reasonable person; such an individual may be liable in an action for negligence for his failure to use reasonable care for the protection of the injured person's interests.

*Small, Clark, Berris & Kohl, P.C.* (by *Marvin L. Berris),* for plaintiff.

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton* (by *Michael L. Updike),* for Bonaventure Skating Center, Inc.

Before: MACKENZIE, P.J., and HOOD and J. E.
MIES,* JJ.

J. E. MIES, J. Plaintiff, Laverne Dumka, as per-
sonal representative of the estate of Allen Dumka,
deceased, appeals as of right from the circuit
court's grant of summary judgment, GCR 1963,
117.2(1), in favor of defendant Bonaventure Skat-
ing Center, Inc. On appeal, we are asked to con-
sider whether, on the facts alleged, Bonaventure
owed a duty to plaintiff's decedent and, if so,
whether Bonaventure breached its duty. The lower
court granted summary judgment for Bonaventure
based on its finding that Bonaventure did not owe
a duty to this plaintiff. We are in accord with that
ruling, and affirm summary judgment in favor of
defendant Bonaventure.

Because we are reviewing a grant of summary
judgment premised on GCR 1963, 117.2(1), failure
to state a claim upon which relief can be granted,
we will set forth the facts as alleged in plaintiff's
complaint and consider them as true. *Aisner v
Lafayette Towers,* 129 Mich App 642, 645-646; 341
NW2d 852 (1983), lv den 419 Mich 871 (1984).

Defendant Bonaventure operates a roller-skating
rink in Farmington Hills. On February 12, 1982,
plaintiff's decedent, Allen Dumka, and his friend,
John Quaderer, paid the admission fee and entered
the rink. At the time of their admission, it was
obvious that Allen Dumka was in a "drug and/or
alcohol induced state of mental and physical incap-
citation [sic] and in need of supervision and medi-
cal attention and treatment." Quaderer had wit-
nessed Dumka ingest quaaludes and alcohol prior
to his admittance to the rink.

Dumka, aided by his companions, sat in the
snack bar area of the rink in an obvious state of

* Circuit judge, sitting on the Court of Appeals by assignment.

incapacitation. Bonaventure nonetheless ejected him from its premises. Dumka's social companions, including Quaderer, aided Dumka to the exit of the roller rink and into his automobile. Quaderer drove the car to a location three hundred feet from Bonaventure's premises, near the Yale Mold & Engineering Company. Quaderer then returned on foot to skate at the rink, leaving Dumka asleep or unconscious in the back of his vehicle.

Bonaventure's agents, servants or employees were aware of Dumka's whereabouts. They permitted Quaderer to return to the car to "check on" Dumka's condition without requiring payment for Quaderer's readmission. At the time Quaderer checked on Dumka, Dumka had been in the car for thirty-five to forty minutes and appeared to be conscious, although still incapacitated. Bonaventure, aware of Dumka's incapacitation and need for medical attention, continued to leave him unsupervised in the back of his unheated automobile in the early morning hours of February 13, 1982.

When Quaderer and other social companions returned to the car, Dumka was gone. John Watson Moroff drove the automobile, with Quaderer and another man as passengers, in search of Dumka. At 2:30 A.M., Moroff was arrested for driving with an expired license. Quaderer failed to continue the search. On February 14, 1984, Quaderer and another man found Dumka's body lying face down in the snow behind Yale Mold & Engineering Company. An autopsy revealed that Dumka died of shock and exposure from the cold.

Plaintiff sued Bonaventure and Quaderer for negligence, which allegedly caused Dumka's death, under the wrongful death statute, MCL 600.2922; MSA 27A.2922. This appeal concerns the lower court's grant of summary judgment as to Bonaventure only.

It is plaintiff's contention that Bonaventure had a duty to aid a helpless invitee such as Dumka and a duty to avoid placing him in a position of greater peril, and that the alleged facts established a breach of that duty. The lower court believed that the alleged facts did not establish such a duty owing to Dumka.

A negligence action requires proof of four elements: (1) that defendant owed a duty to plaintiff; (2) that defendant breached that duty; (3) that defendant's breach of that duty was a proximate cause of damages suffered by plaintiff; and (4) that plaintiff suffered damages. *Ziginow v Redford Jaycees,* 133 Mich App 259, 262; 349 NW2d 153 (1983). In the negligence context, a duty may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another. *Farwell v Keaton,* 396 Mich 281, 286; 240 NW2d 217 (1976), reh den 397 Mich 958 (1976). The existence of a duty is a question of law for the court. *Smith v Allendale Mutual Ins Co,* 410 Mich 685, 713; 303 NW2d 702 (1971), reh den 411 Mich 1154 (1981).

### A. DID BONAVENTURE HAVE A DUTY TO AID DUMKA AS A HELPLESS INVITEE?

In *Farwell v Keaton, supra,* the Supreme Court stated:

> Courts have been slow to recognize a duty to render aid to a person in peril. Where such a duty has been found, it has been predicated upon the existence of a special relationship between the parties; in such a case, if defendant knew or should have known of the other person's peril, he is required to render reasonable care under all the circumstances. [396 Mich 290-291.]

Implicit in a social venture is the understanding that one will render assistance to the other when he is in peril if one can do so without endangering himself. 396 Mich 291. In *Farwell* the defendant and the injured person were social companions. This special relationship spawned a duty to render aid.[1]

Plaintiff urges that this special relationship should be extended to the Dumka-Bonaventure relationship. According to plaintiff, a business invitor such as Bonaventure generally has a higher duty to a business invitee than a host has to a social guest. We agree that a business invitor owes a high duty of care to a business invitee with respect to inspecting its premises to discover unsafe conditions. *Quinlivan v The Great Atlantic & Pacific Tea Co, Inc.*, 395 Mich 244, 258-259; 235 NW2d 732 (1975), reh den 395 Mich 923 (1975).

In *Swartz v Huffmaster Alarms Systems, Inc*, 145 Mich App 431; 377 NW2d 393 (1985), we said the following about the duty of a business establishment to its invitees:

> In Michigan, the general rule regarding the duty of a business establishment to its invitees is that when it invites others onto its premises it must exercise ordinary care and prudence to keep the premises reasonably safe.

---

[1] In *Farwell v Keaton, supra,* defendant was with Richard Farwell when Farwell was severely beaten. Defendant drove Farwell around for two hours. Eventually, Farwell went to sleep in the back of his car, and defendant parked the car in the driveway of Farwell's grandparents, and left after failing to rouse him. Farwell subsequently died as a result of the beating and the failure to immediately receive medical attention. 396 Mich 285. A jury verdict against defendant, the social companion, was upheld. *Farwell* supported its conclusion with *Depue v Flatau,* 100 Minn 299; 111 NW 1 (1907), and *Hutchinson v Dickie,* 162 F2d 103 (CA 6, 1947), both of which involved special relationships between the defendant and the injured party. *Farwell, Depue* and *Hutchinson* all involved situations in which defendants and the injured persons were social companions.

When, as a business invitee, plaintiff entered defendant Red Lobster Restaurant for the purpose of dining, defendant Red Lobster owed plaintiff a duty to exercise ordinary care for his safety while in the establishment. Ordinary care is defined as that care which a reasonably prudent person would exercise in similar circumstances. When plaintiff left the restaurant and was no longer on property owned or controlled by defendant Red Lobster, the duty ended. [145 Mich App 434-435.]

In *Swartz,* the Court held that a restaurant where plaintiff had eaten prior to being struck by an automobile had no duty once plaintiff had departed the premises, in the face of plaintiff's claim that the restaurant knew or should have known that he was intoxicated before he left the premises and should have restrained him from leaving or taken some precautionary step for his safety. 145 Mich App 435. *Swartz* is somewhat analogous to the situation at hand.

Here, the alleged facts do not establish the kind of special relationship between Bonaventure and Dumka which would yield a duty on Bonaventure's part to render reasonable care under the circumstances. Cf., *Farwell v Keaton, supra.* Dumka consumed the quaaludes and alcohol prior to his admittance to the skating rink. Bonaventure did not cause his helpless condition. Dumka merely sought admission to Bonaventure's business establishment. He was not injured by any condition on Bonaventure's premises. We do not think that Bonaventure had a duty to care for a partron who arrived in an intoxicated or drugged condition and was escorted from the premises by his social companions who were not in such condition. In order to impose a duty on the part of a

business invitor to render aid to a business invitee, there must be some greater connection between the business and the visitor's need for aid than is present in this case. Under the circumstances, Bonaventure did not owe Dumka a duty.

## B. DID BONAVENTURE HAVE A DUTY TO AVOID PLACING DUMKA IN GREATER PERIL?

Even where there is no duty to aid a person in peril, there is a duty to avoid affirmative acts which make the situation worse. *Farwell v Keaton, supra.* We have no doubt that Bonaventure owed a duty to Dumka to avoid placing him in a position of greater peril, but under these facts a breach cannot be established.

Plaintiff argues that Bonaventure's affirmative conduct in expelling Dumka from the rink placed Dumka in a position of greater peril. We disagree. Bonaventure took no affirmative action that worsened Dumka's peril. Bonaventure never undertook to render aid to Dumka and never accepted responsibility for his care. Rather than cast Dumka outside alone, Bonaventure requested that Dumka's social companions remove him from the premises. Bonaventure never assumed a duty, and, even if it had, it relinquished such a duty by relinquishing Dumka's care to his social companions. See Prosser & Keeton, Torts (5th ed), § 56, p 382.

Plaintiff also alleges Bonaventure took affirmative action by permitting Dumka's social companions to "check on" him without requiring payment upon readmission. This conduct falls short of establishing that Bonaventure voluntarily assisted in aiding Dumka and failed to do so reasonably. We find no error in the lower court's ruling that plaintiff's complaint did not allege facts sufficient

to impose a duty upon Bonaventure to aid Dumka.[2] Nor did the complaint establish afirmative conduct on Bonaventure's part which worsened Dumka's peril.

Affirmed.

[2] Even were we to find a duty to aid Dumka, the alleged facts do not establish a breach because Bonaventure was not required to do more than what was reasonable. Bonaventure could terminate its responsibility to Dumka by turning him over to his social companions with whom Dumka had a special relationship under *Farwell, supra.*