WHITE v HUMBERT

Docket No. 144445. Submitted April 13, 1994, at Detroit. Decided
August 15, 1994, at 9:15 A.M. Leave to appeal sought.

Sheila White, as personal representative of the estate of Phoebe
Obelton, brought an action in the Wayne Circuit Court against
Hope Humbert, a police dispatcher, and Keith D. Beasley and
Ronald Johnson, police officers, claiming that the failure of the
defendants to discharge properly their official duties contrib-
uted to the death of Obelton. The court, Kay Tertzag, J., denied
motions for summary disposition for defendants Humbert and
Beasley, holding that each owed a duty of care to the plaintiff's
decedent and was not entitled to summary disposition pursuant
to the public duty doctrine. Humbert and Beasley appealed.

The Court of Appeals *held:*

1. The trial court erred in holding that Humbert owed a duty
of care to the decedent other than that owed to the public in
general. A duty of care with respect to a specific individual
arises out of a special relationship with the person. No such
special relationship existed between Humbert and the decedent
where the only connection between the two was that Humbert
was the dispatcher who answered a call made by one of the
decedent's neighbors informing authorities that the decedent
was being attacked and was screaming for help. Because no
special relationship existed between Humbert and the decedent,
Humbert owed no duty of care to the decedent different than
that owed to the public in general and was entitled to summary
disposition on the basis of the public duty doctrine.

2. Because Beasley was at the scene, was informed of the
plight of the decedent, and was in a position to render specific
assistance to the decedent in particular, there existed a suffi-
cient basis to give rise to a special relationship between him
and the decedent such that he owed a specific duty of care
toward the decedent in particular to assist her or protect her
from further injury. Accordingly, the public duty doctrine does

REFERENCES

Am Jur 2d, Negligence § 108.
See ALR Index under Degree and Standard of Care.

not apply, and the trial court properly denied summary disposition for Beasley on that basis.

Affirmed in part, reversed in part, and remanded.

1. PUBLIC OFFICERS — POLICE DISPATCHERS — PUBLIC DUTY DOCTRINE — DUTY OF CARE.

A police dispatcher owes no special duty of care toward the victims of crimes that are reported to the police by third parties, because under those circumstances there exists no special relationship between the dispatcher and the victim; in such circumstances, the public duty doctrine applies.

2. PUBLIC OFFICERS — POLICE OFFICERS — PUBLIC DUTY DOCTRINE — DUTY OF CARE.

A police officer who is at the scene of a reported crime, is informed of the danger to a specific victim, and is in a position to render possible assistance to that particular victim owes a duty of care to that specific victim such that the public duty doctrine does not apply.

*Lopatin, Miller, Freedman, Bluestone, Erlich, Rosen & Bartnick* (by *Richard E. Shaw*), for the plaintiff.

*Donald Pailen,* Corporation Counsel, and *Sharon D. Blackman,* Assistant Corporation Counsel, for the defendants.

Before: SAWYER, P.J., and T. G. KAVANAGH* and L. L. HEATHSCOTT,** JJ.

SAWYER, P.J. Defendants appeal by leave granted from an order of the circuit court denying their motion for summary disposition. We affirm in part and reverse in part.

Because this case involves a question whether summary disposition is appropriate, we will accept as true the facts pleaded by plaintiff. According to plaintiff's complaint, on October 9, 1990, calls for

---

* Former Supreme Court justice, sitting on the Court of Appeals pursuant to Administrative Order No. 1993-6.

** Circuit judge, sitting on the Court of Appeals by assignment.

emergency assistance were placed by two neighbors of plaintiff's decedent. The first call was received by defendant Hope Humbert, a 911 dispatch operator, at 12:30 A.M. Because of the priority rating given to the call, a police unit was not dispatched for approximately forty minutes after receiving the first call. According to plaintiff, while waiting for police to arrive, other calls were placed directly to the precinct. In any event, the first scout-car did not arrive at the scene until approximately 1:30 A.M.

The original call itself was prompted by neighbors who saw and heard plaintiff's decedent being attacked and screaming for help. The two officers who responded to the scene are defendants Keith D. Beasley and Ronald Johnson.[1] When officers Johnson and Beasley arrived, they were met by decedent's neighbors, who explained that decedent had been screaming for help and that, through the decedent's bathroom window, they had witnessed her being attacked. They informed the officers concerning which apartment decedent lived in. The officers then took down the witnesses' names, circled the building, and left without knocking on decedent's door or otherwise attempting to make contact with decedent to determine if she, in fact, was being or had been attacked.

Thereafter, at approximately 4:15 A.M., a call was received by the 911 operator from decedent's husband, who stated he had just stabbed his wife to death. In fact, the time of decedent's death was placed at 4:50 A.M. Indeed, according to plaintiff, although decedent suffered numerous stab wounds, the actual cause of death was due to bleeding from those wounds.

---

[1] Although Johnson is named as a defendant in plaintiff's complaint, he is not a party to this appeal, apparently because the motions for summary disposition in the lower court only affected defendants Humbert and Beasley.

On appeal, defendants argue that they were entitled to summary disposition on the basis of the "public duty" doctrine. Under the public duty doctrine, a public official, such as a police officer, is regarded as owing his duty to the public in general and not to a specific individual unless a special relationship exists between the official and the individual such that the performance by the public official would affect the individual in a manner different in kind from the way performance would affect the public. *Harrison v Director of Dep't of Corrections,* 194 Mich App 446, 456-457; 487 NW2d 799 (1992).

Turning first to the issue of the 911 dispatch operator, defendant Humbert, we conclude that no special relationship can be said to exist between defendant Humbert and decedent. Decedent did not place the call to 911, thus, there were no assurances by Humbert to decedent that help was on the way. In essence, the connection between decedent and Humbert is simply too attenuated to conclude that any relationship or duty would arise between the two beyond the general duty owed by Humbert to the public at large. Accordingly, we conclude that the trial court erred in denying Humbert's motion for summary disposition.

However, with respect to the police officers, and specifically defendant Beasley, we are persuaded that a police officer's response at a crime scene is individualized sufficiently to allow for the creation of a duty to a potential victim at that crime scene above and beyond the general duty owed by the police to the public at large. In this respect, we think it important to consider the context in which the public duty doctrine normally is applied. Specifically, the cases in which claims were dismissed on the basis of the public duty doctrine have the common thread of involving the specula-

tive possibility of a tortfeasor's injuring an unidentifiable member of the general public.

For example, in *Harrison,* a parolee broke into the plaintiff's house, murdered two thirteen-year-old boys, attempted to murder one other, and placed three other individuals in fear of their lives. The plaintiffs brought an action against the director of the Department of Corrections, members of the parole board, and various other officials of the Department of Corrections. In essence, their claim was based upon a theory that the granting of the parolee's parole and his release from prison had been improper. This Court applied the public duty doctrine and rejected the argument that a special relationship existed. This Court noted that, at a minimum, the existence of a special relationship would seem to require some contact between the governmental agency or official involved and the victim and reliance by the victim upon the promises or actions of the governmental agency or official. *Harrison, supra* at 457.

The point made by *Harrison,* and other cases cited by defendants, is that while the defendants in those cases might have had some reason to believe that members of the general public might be endangered by the actions of a third party, there was no identifiable person who was being endangered. That is, the potential for injury and the identification of the victim remain hypothetical until such time as the crime has occurred.

Similarly, in *Chivas v Koehler,* 182 Mich App 467, 475-476; 453 NW2d 264 (1990), the Court concluded that prison guards owed no duty to members of the public killed by escaped prisoners. Again, however, in that case the danger to the public and the identity of the victims remained speculative until the crimes actually occurred.

In the case at bar, on the other hand, the police

were responding to a police call in which they had been informed specifically that a crime was in progress and that a particular, identifiable victim was in danger. This does not involve a matter where some unidentifiable member of the general public might be injured, but where the police were informed that a specific member of the public was, in fact, in the process of being injured.

The closest case to defendants' situation is that which was presented in *Zavala v Zinser,* 123 Mich App 352; 333 NW2d 278 (1983), aff'd sub nom *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567; 363 NW2d 641 (1984). In *Zavala,* the plaintiff was shot outside a Detroit bar, which shooting was observed by police officers sitting in a nearby, marked police vehicle. The plaintiff's theory was that the defendant officers were negligent in failing to prevent the shooting. This Court upheld a grant of summary judgment, concluding both that there was no duty owed the plaintiff under the public duty doctrine and that the doctrine of governmental immunity applied.[2] However, on further appeal, the Supreme Court specifically did not decide the issue of the public duty doctrine, concluding instead that summary judgment was appropriate on the basis of governmental immunity.[3] As Judge KAUFMAN noted in his dissent in *Zavala,* there is a duty imposed by statute and by the Detroit City Charter for the police to preserve the peace and protect the public. *Zavala, supra* at 358-

---

[2] Judge KAUFMAN did file a vigorous dissent, rejecting the conclusion that the public duty doctrine precluded liability by the officers.

[3] Specifically, the Court noted that the officers did not, in fact, do nothing before the shooting. Rather, they determined the need for backup assistance before dealing with the altercation and had radioed for that assistance. It was while waiting for backup to arrive that the shooting occurred. The Court concluded that the officers' decision concerning how to handle the situation was a discretionary-decisional act that came within the governmental immunity doctrine as enunciated in *Ross, supra* at 659-660.

359. The question, of course, becomes: When does a special relationship between the police and a specific member of the public arise that is sufficient to shift that duty from being owed to the public at large to a specific individual?

We believe that where an officer is responding to a call that a specific crime is occurring or has occurred, the specific nature of that police activity is sufficient to give rise to the special relationship between the officer and the victim so as to impose a duty upon the officer to render assistance to the victim or to protect that specific victim from further injury, dependent upon the circumstances.

We do wish to stress, however, that this does not make the police the guarantor of the safety of every crime victim. First, the officer is immune unless his conduct rises to the level of gross negligence. MCL 691.1407(2)(c); MSA 3.996(107)(2)(c). Second, the fact that a police officer is unable to render assistance to the victim does not necessarily mean that the officer handled the call improperly. That is, the officer must handle each situation in accordance with the legal restrictions on the officer and with the proper considerations for the officer's own safety, on the basis of the facts available to the officer at the time. The appropriate response to a particular case may, on the basis of the information available to the officer at the time, be to do nothing. Or, as was the case in *Zavala,* it may be appropriate for the officer to wait for backup.

Turning to the case at bar, whether the officers acted appropriately would have to be determined in light of the information received by the officers from the 911 dispatch operator and from the witnesses at the scene. The officers would have to evaluate that information to determine whether there was, in fact, a likelihood that there was a

victim in need of assistance, whether the apartment should be approached, and whether the facts would justify their entry into the apartment to determine whether the victim was in need of assistance. Whether defendant Beasley and his partner breached their duty to the victim in the manner in which they handled the call or were grossly negligent, so as not to be entitled to immunity, in their handling of the call is not the question before us. Rather, we merely hold that once they were called to a crime scene in which they were informed that plaintiff's decedent was being attacked, that created a sufficient special relationship between them and the victim to create a duty to that victim to handle the call appropriately. Whether they handled the call appropriately and whether, even if negligent in handling the call, their negligence rises to the level of gross negligence necessary under the governmental immunity statute are questions of fact separate and apart from the duty question. We merely hold that a duty of care existed; the questions whether that duty was breached and whether defendants are entitled to governmental immunity are not before us.

For the above reasons, we conclude that the trial court correctly determined that defendant Beasley owed a duty to plaintiff's decedent, but erred in concluding that a duty was owed by defendant Humbert. Accordingly, we affirm the trial court's denial of summary disposition with respect to Beasley, but reverse that denial with respect to Humbert. On remand, the trial court shall enter the appropriate order granting summary disposition in favor of Humbert.

Affirmed in part, reversed in part, and remanded to the trial court for further proceedings

consistent with this opinion. We do not retain jurisdiction. Defendant Humbert only may tax costs, the remaining parties not having prevailed in full.