GAZETTE v CITY OF PONTIAC

Docket No. 170857. Submitted April 4, 1995, at Detroit. Decided July 14, 1995, at 9:20 A.M. Leave to appeal sought.

Cheriee Gazette, individually and as personal representative of the estate of Pamela K. Bandy, brought an action in the Oakland Circuit Court against the City of Pontiac, the Pontiac Police Department, and two individual members of the department, alleging violation of the Michigan Constitution's rights of due process and equal protection of the law, the Handicappers' Civil Rights Act, the Civil Rights Act, and negligence and further alleging violation of various federal rights. The plaintiff alleged that she had informed the Pontiac Police Department that the deceased, her mother, was missing after having left home to have her automobile washed. The plaintiff further alleged that she had informed the police of the type of automobile that the deceased was driving, the car wash to which the deceased was going, and the fact that the deceased was a rehabilitated alcoholic who normally did not disappear for extended periods of time and that, although the police later informed her that they had investigated the car wash and had inquired about any suspicious activity in the deceased's bank account, they had done neither because they believed that the deceased was on a drinking binge. Six days after the deceased disappeared, a Waterford Township police officer stopped the deceased's automobile for a traffic violation while it was being driven by an employee of the car wash and found the deceased in the trunk, dead no more than thirty-six hours. The matter was removed to the federal district court for consideration of the federal claims, which subsequently were dismissed. Thereafter, the circuit court, Robert L. Templin, J., granted summary disposition for the defendants of the state claims on the basis that the plaintiff had failed to state a claim on which relief could be granted. The plaintiff appealed.

The Court of Appeals *held:*

REFERENCES

Am Jur 2d, Civil Rights §§ 28, 260; Constitutional Law § 121; Municipal, County, School, and State Tort Liability §§ 441-444.

See ALR Index under Alcoholics and Alcoholism; Civil Rights and Discrimination; Disabled Persons; Due Process; Police and Law Enforcement Officers.

1. A claim pursuant to § 302 of the Handicappers' Civil Rights Act, MCL 37.1302; MSA 3.550(302), of discrimination in the full and equal enjoyment of a public accommodation or public services requires that a plaintiff allege the existence of a handicap within the meaning of the act, that the handicap is unrelated to the ability to utilize and benefit from the place of public accommodation or the public services, and that because of the handicap there was discrimination in one of the ways set forth in the act.

2. Alcoholism is a handicap for the purpose of the prohibition of discrimination in the provision of public accommodation or public services under § 302 of the Handicappers' Civil Rights Act.

3. Although a local police department is clearly a public service within the meaning of § 302 of the Handicappers' Civil Rights Act, the plaintiff failed to allege facts that would support a finding that the defendants refused to assist the deceased because of her alcoholism. Because the plaintiff did not allege that the defendants were aware that the deceased was in peril and nevertheless declined to help her because she was an alcoholic, the trial court correctly determined that the plaintiff failed to state a claim under the Handicappers' Civil Rights Act.

4. The duty of the police to investigate and detect crime is owed to the public at large, not to any particular individual unless there exists a special relationship with a particular individual that creates a specific duty of care with respect to that individual. None of the allegations of the plaintiff suggest that the police had a special relationship with the deceased that would create a special duty of care by the police with regard to the deceased. Accordingly, the trial court correctly determined that the defendants could not be held liable for any negligent failure to pursue more vigorously the investigation of the deceased's disappearance.

5. A state's failure to protect an individual from private violence does not result in a violation of the individual's constitutional right to due process of law. The United States Constitution imposes upon a state affirmative duties of care and protection of particular individuals only if a special relationship exists, such as where the state has deprived an individual of liberty or has placed an individual at greater risk than the individual would have been had the state not acted. None of the acts or omissions of the defendants alleged by the plaintiff clearly constitute an affirmative act that increased the deceased's vulnerability to danger.

6. Because the plaintiff did not claim that the police deferred

their investigation of the deceased's disappearance because of a department policy that required delay in undertaking searches of missing alcoholics, the trial court correctly granted summary disposition for the defendants of the equal protection claim, because the failure to allege that the police activities were the result of a state-created classification that does not bear some minimal fair relationship to a legitimate public purpose precludes the establishing of a viable claim of denial of equal protection.

Affirmed.

1. CIVIL RIGHTS — HANDICAPPERS' CIVIL RIGHTS ACT — HANDICAP — PUBLIC ACCOMMODATIONS AND SERVICES — ALCOHOLISM.

Alcoholism is a handicap within the meaning of the provision of the Handicappers' Civil Rights Act prohibiting discrimination in the provision of public accommodation or public services (MCL 37.1302; MSA 3.550[302]).

2. CIVIL RIGHTS — HANDICAPPERS' CIVIL RIGHTS ACT — PUBLIC SERVICES — POLICE DEPARTMENTS.

Local police departments are public services within the meaning of the provision of the Handicappers' Civil Rights Act prohibiting discrimination in the provision of public accommodation or public services (MCL 37.1302; MSA 3.550[302]).

3. CIVIL RIGHTS — HANDICAPPERS' CIVIL RIGHTS ACT — POLICE DISCRETION.

The Handicappers' Civil Rights Act was not intended to modify the general rule that police officers are entitled to discretion in the performance of their duties (MCL 37.1101 *et seq.*; MSA 3.550[101] *et seq.*).

4. CONSTITUTIONAL LAW — DUE PROCESS — EQUAL PROTECTION.

The Michigan constitutional guarantees of due process and equal protection are construed no more broadly than the corresponding federal guarantees.

5. CONSTITUTIONAL LAW — DUE PROCESS — POLICE PROTECTION.

A state's failure to protect an individual from private violence does not result in a violation of the individual's constitutional right to due process of law; the United States Constitution imposes upon a state affirmative duties of care and protection of particular individuals only if a special relationship exists.

*Dib & Fagan, P.C.* (by *Barry S. Fagan*), for the plaintiff.

*Cummings, McClorey, Davis & Acho, P.C.* (by *Marcia L. Howe*), for the defendant.

Before: CAVANAGH, P.J., and JANSEN and D. C. KOLENDA,* JJ.

CAVANAGH, P.J. Plaintiff, Cheriee Gazette, individually and as personal representative of the estate of Pamela Kay Bandy, appeals as of right from an order granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(8). We affirm.

On September 18, 1990, Bandy left her home around 8:30 A.M. intending to get her car washed at the Perry Car Wash in Pontiac. When Bandy did not return home after a reasonable time had passed, plaintiff, Bandy's daughter, became concerned. Plaintiff and other members of the family contacted defendant Pontiac Police Department. Plaintiff gave the police a description of Bandy's white 1981 Cadillac Fleetwood, which had an unusual mark on the driver's door. Plaintiff also requested that the police investigate the Perry Car Wash, and she provided them with Bandy's bank account numbers so that they could inquire into whether unauthorized withdrawals had been made.

During the course of her conversation with the police, plaintiff mentioned that Bandy was an alcoholic and had recently been released from a rehabilitation program. Plaintiff informed the police that Bandy did not normally disappear for extended periods. Nevertheless, according to plaintiff, the police stated that they were familiar with Bandy, that Bandy was most likely on a drinking binge, and that she would eventually reappear. Plaintiff claims that the police informed her that

* Circuit judge, sitting on the Court of Appeals by assignment.

they had investigated the car wash, had checked Bandy's bank accounts, and had discovered no evidence of wrongdoing, although apparently, in fact, they had done neither.

On September 24, 1990, the Waterford Township police pulled over a white 1981 Cadillac Fleetwood for a routine traffic violation. After discovering that the driver, Robert Hogan, had an outstanding bench warrant, the police searched the car and discovered Bandy's body in the trunk. Estimates placed the time of death at between twelve and thirty-six hours before the body was found. The cause of death was determined to be a combination of starvation, dehydration, and methanol poisoning from consumption of windshield washer fluid that had been stored in the trunk. Bandy had been physically and sexually assaulted.

Hogan was an employee of the Perry Car Wash. Between September 18 and September 24, Hogan had driven Bandy's Cadillac around Pontiac. During the time that Bandy was missing, unauthorized withdrawals were made from her bank accounts.

On September 23, 1992, plaintiff filed a complaint in the Oakland Circuit Court, alleging violations of the Michigan Constitution, the Handicappers' Civil Rights Act (HCRA), MCL 37.1101 et seq.; MSA 3.550(101) et seq., the Civil Rights Act, MCL 37.2101 et seq.; MSA 3.548(101) et seq., and negligence. The complaint also raised federal claims pursuant to 42 USC 1983 and § 794 of the Rehabilitation Act, 29 USC 794. The case was removed to the federal district court. On April 12, 1993, Judge Horace Gilmore granted defendants' motion for summary judgment of plaintiff's federal claims and remanded the case to the circuit court.[1]

---

[1] A federal appellate court subsequently affirmed Judge Gilmore's decision. *Gazette v Pontiac,* 41 F3d 1061 (CA 6, 1994).

On July 16, 1993, defendants moved for summary disposition pursuant to MCR 2.116(C)(8). The trial court noted that the police owe a duty to the general public and that the police owe a duty to a specific individual only if a special relationship has been formed. The trial court ruled that plaintiff had not shown that a special relationship existed between Bandy and defendants. The trial court also rejected plaintiff's argument that defendants failed to provide public services to Bandy because she was an alcoholic and thereby violated the HCRA and the Civil Rights Act. The trial court granted defendants' motion for summary disposition in an order entered on September 28, 1993.

On appeal, an order granting or denying a motion for summary disposition is reviewed de novo. *Markillie v Livingston Bd of Co Road Comm'rs,* 210 Mich App 16, 18; 532 NW2d 878 (1995). A motion for summary disposition brought pursuant to MCR 2.116(C)(8) tests the legal sufficiency of the plaintiff's complaint and should be granted only if the claims are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. *Rogalski v Tavernier,* 208 Mich App 302, 304; 527 NW2d 73 (1995).

I

Plaintiff first contends that the trial court erred in granting defendants' motion for summary disposition of plaintiff's claim under the HCRA. Plaintiff claims that defendants failed to provide Bandy a public service because she was an alcoholic. Plaintiff argues that because Bandy's alcoholism was unrelated to her ability to utilize and benefit from police protection, plaintiff presented a valid claim under the HCRA.

Article 3 of the HCRA prohibits the denial of

access to public accommodations or public services because of a handicap. In order to establish a prima facie case of discrimination under Article 3, a plaintiff must allege that (1) he is "handicapped" as defined in the statute, (2) the handicap is unrelated to his ability to utilize and benefit from a place of public accommodation or public service, and (3) he has been discriminated against in one of the ways set forth in the statute. MCL 37.1103(e)(i) (B); MSA 3.550(103)(e)(i)(B); MCL 37.1302; MSA 3.550(302); *Miller v Detroit,* 185 Mich App 789, 792; 462 NW2d 856 (1990).

As a preliminary matter, we must determine whether alcoholism is a handicap under Article 3 of the HCRA. We therefore look to the language of the statute. When interpreting a statute, we are obligated to determine and give effect to the intent of the Legislature. In construing a statute, we must give the language a valid and reasonable construction that gives effect to all its parts. *Wright v Vos Steel Co,* 205 Mich App 679, 684; 517 NW2d 880 (1994).

Under the HCRA,

> "handicap" means 1 or more of the following:
> (i) A determinable physical or mental characteristic of an individual, which may result from disease, injury, congenital condition of birth, or functional disorder, if the characteristic:
>
> * * *
>
> (B) For purposes of article 3, is unrelated to the individual's ability to utilize and benefit from a place of public accommodation or public service. [MCL 37.1103(e); MSA 3.550(103)(e).]

The HCRA expressly excludes alcoholism as a handicap with respect to employment discrimination under Article 2 where the condition prevents

the employee from performing his duties. MCL 37.1103(f)(ii); MSA 3.550(103)(f)(ii). The omission of a provision in one part of a statute that is included in another part should be construed as intentional. See *Farrington v Total Petroleum, Inc,* 442 Mich 201, 210; 501 NW2d 76 (1993). Thus, we conclude that the Legislature intended that alcoholism be considered a handicap for the purposes of the ban on discrimination in the provision of public accommodations and public services under Article 3 of the HCRA.

Next we consider whether a police department is a "public service" under the HCRA. The statute defines a "public service" as

a public facility, department, agency, board, or commission, owned, operated, or managed by or on behalf of this state or a subdivision of this state, a county, city, village, township, or independent or regional district in this state, or a tax exempt private agency established to provide service to the public. [MCL 37.1301(b); MSA 3.550(301)(b).]

Defendant Pontiac Police Department is clearly a public service under the HCRA.

Nevertheless, the facts of this case, as alleged by plaintiff, do not support a finding that defendants refused to assist Bandy because of her alcoholism. Defendants merely knew that Bandy was missing for unknown reasons; they had no actual knowledge that she was in danger. The police officers, relying on their experience with Bandy, considered it likely that Bandy had gone off on a drinking binge. While, with the advantage of hindsight, it is clear that the officers were tragically wrong, we do not find a violation of the HCRA. The HCRA was not intended to modify the general rule that police officers are entitled to discretion in the performance of their duties. See *Ross v Consumers*

*Power Co (On Rehearing),* 420 Mich 567, 659-660; 363 NW2d 641 (1984). Because plaintiff does not claim that defendants were aware of Bandy's peril and nonetheless declined to help her because she was an alcoholic, we find that the trial court correctly granted defendants' motion for summary disposition of plaintiff's claim under the HCRA.

II

Plaintiff next argues that the trial court erred in finding that defendants did not owe a duty to Bandy. A prima facie case of negligence requires proof of four elements: (1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty; (3) causation; and (4) damages. *Schneider v Nectarine Ballroom, Inc (On Remand),* 204 Mich App 1, 4; 514 NW2d 486 (1994). The question whether a duty exists is one of law for the court's resolution. In a negligence action, summary disposition properly is granted pursuant to MCR 2.116(C)(8) if it is determined as a matter of law that the defendant owed no duty to the plaintiff. *Schneider, supra.*

Under the public-duty doctrine, a public official, such as a police officer, is regarded as owing his duty to the public in general and not to a specific individual unless a special relationship exists between the official and the individual such that the performance by the public official would affect the individual in a manner different in kind from the way performance would affect the public. *White v Humbert,* 206 Mich App 459; 522 NW2d 681 (1994); *Harrison v Director of Dep't of Corrections,* 194 Mich App 446, 456-457; 487 NW2d 799 (1992). At a minimum, the existence of a special relationship requires some contact between the government agency or official involved and the victim

and reliance by the victim upon the promises or actions of the government agency or official. *White, supra* at 463; *Harrison, supra* at 457.

As a general rule, a police officer's duty to preserve the peace is owed to the public at large, not to any one individual. Thus, under ordinary circumstances, the police owe a duty to the public to detect and investigate crime, but do not owe a duty to any individual. *Flones v Dalman,* 199 Mich App 396; 502 NW2d 725 (1993).

However, this Court has held that in some circumstances it is appropriate to impose on the police a duty toward a particular individual. In *White,* neighbors of the plaintiff's decedent telephoned 911. When the police arrived, the neighbors reported that they had heard screams and, through a window, had witnessed plaintiff's decedent being attacked. The police officers took the witnesses' names, circled the building, and then left without knocking on the decedent's door or otherwise attempting to make contact with her. Later that night, the decedent's husband reported that he had stabbed her, and the cause of death was determined to be loss of blood from the wounds. *White, supra* at 461.

The *White* Court held that where an officer responds to a call that a particular crime is occurring or has occurred, the specific nature of that police activity is sufficient to give rise to a special relationship between the officer and the victim so as to impose a duty upon the officer to render assistance to the victim or to protect that specific victim from further injury, depending on the circumstances. *Id.* at 465.

We believe that the facts of the present case are distinguishable from *White.* In *White,* the police were specifically informed that a crime was in progress and a particular, identifiable victim was

in the process of being injured. *Id.* at 464. However, in the present case, the police had no knowledge that Bandy was in danger. The most that can be said is that the police were informed that Bandy had disappeared without explanation; neither plaintiff nor the police had any knowledge that Bandy had been abducted by Hogan.

Our analysis is not affected by plaintiff's charge that the police falsely told her that they had investigated the car wash and checked Bandy's bank accounts without finding any evidence of wrongdoing. Assuming that these allegations are true, as we must in reviewing the trial court's grant of summary disposition pursuant to MCR 2.116(C)(8), we still cannot find that a special relationship existed that would impose a duty on the police to render assistance to Bandy, because there was no contact between *Bandy* and the police. It therefore cannot be said that Bandy relied on the misrepresentations of the police. *White, supra* at 463; *Harrison, supra* at 457.

As the *White* Court emphasized, the police are not the guarantors of the safety of every crime victim. The fact that a police officer is unable to render assistance to the victim does not necessarily mean that the officer handled the call improperly. The appropriateness of the officer's response depends on the information available to the officer at the time and is a question of fact separate from the question whether a duty exists. *White, supra* at 465-466.

### III

Finally, plaintiff argues that the trial court erred in dismissing plaintiff's claims of due process and equal protection violations under the Michigan Constitution. We find no error. We note that

plaintiff's claims of similar violations under the United States Constitution already have been dismissed in the federal court. *Gazette v Pontiac,* 41 F3d 1061 (CA 6, 1994). Michigan's guarantees of due process and equal protection are construed no more broadly than the federal guarantees. *Doe v Dep't of Social Services,* 439 Mich 650, 670-671; 487 NW2d 166 (1992); *Saxon v Dep't of Social Services,* 191 Mich App 689, 698; 479 NW2d 361 (1991).

Plaintiff argues that the United States Supreme Court's decision in *DeShaney v Winnebago Co Dep't of Social Services,* 489 US 189; 109 S Ct 998; 103 L Ed 2d 249 (1989), supports her due process claim. In *DeShaney,* the Supreme Court stated that there is no violation of the Due Process Clause where the state neither creates the danger to a victim nor does anything to render the victim more vulnerable to that danger. *Id.* at 201. Although plaintiff's brief is not clear, she appears to argue that defendants either created the danger to Bandy or rendered Bandy more vulnerable to that danger when they failed to act on her requests that they investigate Bandy's disappearance and made misrepresentations regarding the status of the investigation.

We do not find this reasoning persuasive. The danger to Bandy was created by Hogan, not defendants. A state's failure to protect an individual from private violence does not constitute a violation of the Due Process Clause. *Id.* at 197. The United States Constitution imposes upon a state affirmative duties of care and protection with regard to particular individuals only if a special relationship exists. Such a special relationship is created when the state takes a person into custody or otherwise deprives him of his liberty. *Id.* at 198-200. In this case, defendants did not take Bandy

into custody or deprive her of her liberty in any way.

Plaintiff, citing *Wood v Ostrander,* 879 F2d 583 (CA 9, 1989), cert den 498 US 938 (1990), argues that a special relationship exists where the state takes an affirmative action that increases the plaintiff's danger to a level beyond the level it would have been absent state action. In *Wood,* a police officer arrested the plaintiff's companion and impounded the companion's car. The police officer then drove off, leaving the plaintiff stranded in a high-crime area at 2:30 A.M. The plaintiff accepted a ride from a passerby, who took her to a secluded area and raped her. *Id.* at 586. The *Wood* court ruled that the police officer's actions affirmatively placed the plaintiff in a position of danger. *Id.* at 589-590.

However, the police officers' delay in investigating Bandy's disappearance was not an affirmative act that placed Bandy in a more dangerous position. Furthermore, we cannot say that defendants' alleged misrepresentations increased Bandy's vulnerability to the danger. At most, in reliance on defendants' falsehoods, Bandy's family did not conduct their own investigation into her disappearance. However, the connection between defendants' prevarications and Bandy's death is too attenuated to represent a due process violation. There is no way of knowing whether the police or Bandy's family could have located Bandy in time to prevent her death.

Likewise, we do not find a violation of Bandy's right to equal protection. The guarantee of equal protection requires that a state-created classification minimally bear some fair relationship to a legitimate public purpose. *El Souri v Dep't of Social Services,* 429 Mich 203, 207-208; 414 NW2d

679 (1987). Plaintiff has not alleged that Bandy was denied equal protection because of a state-created classification. Plaintiff does not claim that the police deferred their investigation of Bandy's disappearance because of a department policy mandating delay in searches for missing alcoholics. Rather, the alleged classification was made by individual police officers on the basis of the facts available to them, which included their own knowledge of the victim. Accordingly, the trial court correctly granted defendants' motion for summary disposition of plaintiff's equal protection claim.

Because of our resolution of these issues, we do not address defendants' claim that they were entitled to a grant of summary disposition on the basis of governmental immunity.

Affirmed.