RENO v CHUNG

Docket No. 175158. Submitted March 5, 1996, at Detroit. Decided November 12, 1996, at 9:30 A.M. Leave to appeal sought.

Kenneth Reno brought an action in the Wayne Circuit Court against Yung A. Chung, M.D., a Wayne County Medical Examiner, and others, seeking, in relevant part, damages resulting from Dr. Chung's alleged gross negligence with regard to her performance of an autopsy following the murder of the plaintiff's wife and daughter. The plaintiff alleged that he was wrongfully charged with the murders as a result of Dr. Chung's erroneous statements after the autopsy that the daughter's injuries would have prevented her from speaking to the plaintiff just before she died, as the plaintiff had claimed. The court, Diane M. Hathaway, J., granted summary disposition for Dr. Chung, in part, because, as a county medical examiner, she owed no duty to the plaintiff when conducting the autopsy. The plaintiff appealed from that order.

The Court of Appeals *held*:

1. Summary disposition was properly granted. Under the public-duty doctrine, a public official such as a county medical examiner owes a duty to the general public and not to any one individual unless a special relationship exists between the official and the individual. The existence of a special relationship requires, at a minimum, some contact between the official involved and the victim and reliance by the victim upon the promises or actions of the official.

2. There was no special relationship between the plaintiff and Dr. Chung. Although Dr. Chung's incorrect autopsy findings may have breached the duty she owed the general public, in the absence of a duty owed to the plaintiff individually, the plaintiff failed to set forth a cognizable claim of negligence.

3. To the extent that the plaintiff's claim was also based on Dr. Chung's alleged negligent preliminary examination testimony, statements made by a witness in the course of a judicial proceeding are absolutely privileged where they are relevant, material, or pertinent to the issues being tried.

Affirmed.

T. L. LUDINGTON, J., dissenting, stated that Dr. Chung did have a duty to the plaintiff that was unique or special from the duty she owed to the public in general as a public employee.

1. Although the public-duty doctrine applies in this case, the special-relationship test does not because that test applies only to police officers and governmental safety professionals. The potential for injury to the plaintiff was evident at the time Dr. Chung rendered her opinion, and the identification of the plaintiff as the party directly affected by Dr. Chung's opinion was real and specific, not hypothetical or general.

2. The witness privilege is not applicable here because the allegations relate to Dr. Chung's opinion, which she rendered long before she was called as a witness.

3. The plaintiff demonstrated the existence of an issue that should be resolved by the jury with respect to Dr. Chung's alleged breach of the standard of care.

1. PUBLIC OFFICERS — PUBLIC-DUTY DOCTRINE — SPECIAL-RELATIONSHIP EXCEPTION.

The public-duty doctrine applies in Michigan and provides that a public official owes a duty to the general public and not to any one individual; the special-relationship exception to the public-duty doctrine exposes a public official to liability for negligence where there is a special relationship between the official and the individual harmed by the negligence; the existence of a special relationship requires, at a minimum, some contact between the official and the individual and reliance by the individual upon the promises or actions of the official.

2. NEGLIGENCE — WITNESSES — JUDICIAL PROCEEDINGS — ABSOLUTE PRIVILEGE.

Statements made by a witness in the course of a judicial proceeding are absolutely privileged provided they were relevant, material, or pertinent to the issues being tried.

*Donald M. Fulkerson*, for the plaintiff.

*Jennifer M. Granholm*, Wayne County Corporation Counsel, and *Ellen E. Mason*, Assistant Corporation Counsel, for the defendant.

Before: MACKENZIE, P.J., and CAVANAGH and T. L. LUDINGTON,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

MacKenzie, P.J. Plaintiff appeals as of right from an order granting summary disposition for Wayne County Medical Examiner Dr. Yung A. Chung (hereafter defendant). We affirm.

On May 10, 1991, plaintiff came home from a shopping trip and discovered that his wife, Carlynne; and daughter, Robin, had been repeatedly stabbed. Additionally, Robin's throat had been cut. Plaintiff told investigators that Robin's dying words were that an acquaintance, Tommy Collins, was the perpetrator.

The police and the prosecutor's office considered both Collins and plaintiff to be suspects in the murders. Assistant Prosecutor Daniel Less met with defendant medical examiner, who informed Less that the wounds to Robin's neck would have made it impossible for her to talk. On the basis of this information, the authorities believed plaintiff was lying about the events of May 10. On May 11, he was charged with murder, arrested, and held without bond. Plaintiff was bound over following a preliminary examination at which defendant testified that, given the nature of the injuries to her throat, Robin could not possibly have spoken to plaintiff.

Prosecutor Less subsequently consulted with another pathologist and an otolaryngologist, both of whom found incorrect defendant's opinion that Robin would not have been able to talk. This information, along with other evidence, led to the dismissal of the charges against plaintiff the following October. Collins and another individual were eventually convicted of the murders. This suit alleging defendant's gross negligence followed.

The trial court granted summary disposition for defendant in part because, as county medical exam-

iner, she owed no duty to plaintiff when conducting an autopsy. The question whether a duty exists is one of law for the court's resolution. *Gazette v Pontiac*, 212 Mich App 162, 170; 536 NW2d 854 (1995). In a negligence action, summary disposition is properly granted pursuant to MCR 2.116(C)(8) if it is determined as a matter of law that the defendant owed no duty to the plaintiff. *Id.* We find that summary disposition was properly granted in this case.

Our Supreme Court has recently held that the public-duty doctrine applies in Michigan. *White v Beasley*, 453 Mich 308; 552 NW2d 1 (1996). Under the public-duty doctrine, a public official owes a duty to the general public and not to any one individual unless a special relationship exists between the official and the individual. *Jones v Wilcox*, 190 Mich App 564, 568; 476 NW2d 473 (1991). See also *Simonds v Tibbitts*, 165 Mich App 480, 483; 419 NW2d 5 (1987). At a minimum, the existence of a special relationship requires some contact between the official involved and the victim and reliance by the victim upon the promises or actions of the official. *Gazette, supra*, pp 170-171. A county medical examiner is a public official. See, generally, *Burse v Wayne Co Medical Examiner*, 151 Mich App 761; 391 NW2d 479 (1986); *O'Toole v Fortino*, 97 Mich App 797; 295 NW2d 867 (1980); *Allinger v Kell*, 102 Mich App 798; 302 NW2d 576 (1981), reversed and remanded in part on other grounds 411 Mich 1053 (1981).

In this case, there was no special relationship between plaintiff and defendant. The parties never had direct contact with one another, and plaintiff never relied on defendant's actions. *Gazette, supra.* Instead, as part of her public duty to detect crime and

obtain evidence, *Allinger, supra,* p 818 (opinion of MACKENZIE, P.J.), defendant's relationship was with plaintiff's adversary, the prosecutor's office. Defendant owed a duty to the general public to make an investigation into the cause and manner of Robin's death, MCL 52.202; MSA 5.953(2), by performing the autopsy and "carefully reduc[ing] . . . to writing every fact and circumstance tending to show the condition of the body," MCL 52.205(3); MSA 5.953(5)(3). While defendant's incorrect autopsy findings may have breached the duty she owed the general public, in the absence of a duty owed to plaintiff individually, plaintiff failed to set forth a cognizable claim of negligence. *Jones, supra,* p 568.

To the extent that plaintiff's claim was also premised on the theory that defendant was negligent in testifying at plaintiff's preliminary examination, summary disposition was also proper. It is well settled in Michigan that statements made by a witness in the course of a judicial proceeding are absolutely privileged provided they were relevant, material, or pertinent to the issues being tried. *Meyer v Hubbell,* 117 Mich App 699, 709; 324 NW2d 139 (1982), citing *Sanders v Leeson Air Conditioning Corp,* 362 Mich 692, 695; 108 NW2d 761 (1961), and *Pagoto v Hancock,* 41 Mich App 622, 623; 200 NW2d 777 (1972). See also *Couch v Schultz,* 193 Mich App 292, 294-295; 483 NW2d 684 (1992). Defendant therefore may not be held liable for any "negligent" testimony given at plaintiff's preliminary examination.

Our disposition of the above issues makes it unnecessary to address plaintiff's remaining claims on appeal.

Affirmed.

CAVANAGH, J., concurred.

T. L. LUDINGTON, J. (*dissenting*). I respectfully disa-
gree with the opinion authored by the majority. I
would find that Dr. Yung A. Chung, a Wayne County
Medical Examiner, did have a duty to plaintiff that
was unique or special from the duty that she owed to
the public in general as a public employee. In addi-
tion, I would find that plaintiff has demonstrated the
existence of an issue that should be resolved by the
jury with respect to Dr. Chung's breach of the stan-
dard of care.

## FACTS

The majority opinion succinctly explains the facts.
However, several factual matters should be empha-
sized because they directly relate to the legal issues
framed for this Court's consideration.

First, the importance of Dr. Chung's medical opin-
ion with regard to Assistant Prosecutor Less' decision
to charge plaintiff with the murder of his wife and
daughter cannot be overstated. Dr. Chung's opinion
that Robin Reno was unable to talk after receiving
her throat wounds was integral to Less' conclusion
that plaintiff was lying. As Less testified in deposition,
Dr. Chung's medical opinion was "the most important
part of my decisionmaking process."

Second, in preparation for trial, Less sought the
opinions of a respected pathologist and otolaryngolo-
gist to corroborate Dr. Chung's expected trial testi-
mony. Less consulted with Robert Mathog, M.D., who
was the Chairman of Otolaryngology at Wayne State
University, and Laurence R. Simson, Jr., M.D., the Ing-
ham County Medical Examiner. Dr. Chung was unwill-
ing to voluntarily share any of the medical evidence

concerning Robin Reno's wounds. The prosecutor acquired the necessary evidence for independent review only after the issuance of a court order.

Third, Dr. Mathog and Dr. Simson agreed not only that Dr. Chung's physical findings in the autopsy of Robin Reno were erroneous, but also, as stated in an affidavit by Dr. Simson, that there was "no anatomic or physiologic basis for her assertion that Robin Reno would have been unable to speak because of her laryngeal injuries." Dr. Simson's affidavit concluded with his opinion that "[s]ince Robin Reno's ability or inability to speak was such an important issue in the case of *People v Reno,* it would have been prudent for the medical examiner to have sought consultation if she did not have confidence in her own ability to interpret such laryngeal injuries."

Dr. Mathog furnished a similar affidavit replete with criticism of Dr. Chung's analysis and concluding with his opinion that Dr. Chung's conduct was "a breach of her duty to perform her duties as medical examiner as a reasonably prudent medical examiner would have, and was gross negligence defined as conduct so reckless as to demonstrate a substantial lack of concern for whether an injury was likely to result, resulting in the imprisonment of Mr. Reno based on her testimony."

### PUBLIC-DUTY DOCTRINE

The trial court and my appellate colleagues believe that application of the public-duty doctrine to the facts of this case is dispositive. While I agree that our Supreme Court's decision in *White v Beasley,* 453 Mich 308; 552 NW2d 1 (1996), reversing *White v Humbert,* 206 Mich App 459; 522 NW2d 681 (1994), is

controlling, I do not agree that application of the principles enunciated in *White* is dispositive. However, before outlining my understanding of the special-relationship exception applied in *White*, I must acknowledge that I concur with the comments of Justice LEVIN in his dissenting opinion related to the public-duty doctrine.

The lead opinion in *White*, authored by Chief Justice BRICKLEY, accurately observes that the public-duty doctrine has not been expressed as a doctrine of governmental immunity but one of tort, based on the initial question applicable to any negligence action, that is, whether the defendant owes the plaintiff any judicially cognizable duty.

The question whether a legal duty exists in a negligence action historically has been a question for the court to resolve on the basis of its balancing of the societal interest involved, the severity of the risk to the plaintiff, the burden of imposing a duty upon the defendant, the likelihood of the occurrence, and the relationship of the parties. *Dumka v Quaderer*, 151 Mich App 68; 390 NW2d 200 (1986); *Swartz v Huffmaster Alarms Systems, Inc*, 145 Mich App 431; 377 NW2d 393 (1985). The question whether a duty should be imposed is, as it has been described, an exercise of judicial policy making based not only on logic and science but also on resolution of the competing public policy considerations. 57A Am Jur 2d, § 87, p 143.

Notwithstanding the analytically separate points of departure, the public-duty doctrine and the doctrine of governmental immunity have more in common than merely arising in similar factual settings and always, when applicable, being dispositive of the case. Both doctrines have developed as a result of

judicial efforts to balance public-policy interests, on the one hand promoting the vigorous and effective administration of governmental policy, while on the other hand deterring arbitrary or negligent conduct on the part of government employees.

A survey of the development of the public-duty doctrine reflects the fact that courts in many jurisdictions apply the public-duty doctrine when, as part of determining whether immunity is appropriate, they are classifying a governmental actor's actions as either ministerial or discretionary. Anno: *Modern status of rule excusing governmental unit from tort liability on theory that only general, not particular, duty was owed under circumstances*, 38 ALR4th 1194. Indeed, Justice CAVANAGH makes this point persuasively in *White, supra* at 331, n 2, where he observes that the Legislature has chosen to disregard any distinction between discretionary or ministerial acts with respect to the tort liability of governmental individuals. However, he then explains that "the distinction remains useful for explaining the policy reasons behind the public-duty doctrine."

Moreover, Justice CAVANAGH's observation that the public-duty doctrine is justified because "[t]he legal tort system is ill-equipped to second-guess" decisions in the public sector is one of the primary arguments historically advanced to justify the doctrine of governmental immunity. *White, supra* at 331. I find it difficult to accept the notion that juries are unable to evaluate such decisions, for example, the assignment of priority to distress calls received by a police station. We routinely ask juries to evaluate far more complex private-sector problems in the fields of professional negligence, products liability, construction,

and pharmacology, just to name a few. Nevertheless, the point remains that the public-policy argument, whatever its merit, is one of the same primary arguments advanced to justify the doctrine of governmental immunity.

More importantly, the Legislature has given careful attention to the policy considerations underlying both doctrines in conjunction with the Legislature's attention to the doctrine of governmental immunity. In *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567; 363 NW2d 641 (1984), our Supreme Court addressed immunity for "lower level" governmental employees and held as follows:

> Lower level officials, employees, and agents are immune from tort liability only when they are
>
> a) acting during the course of their employment and are acting, or reasonably believe they are acting, within the scope of their authority;
>
> b) acting in good faith; and
>
> c) performing discretionary-decisional, as opposed to ministerial-operational, acts. [420 Mich 592.]

Subsequently, the Legislature addressed this field, culminating with the passage of 1986 PA 175, MCL 691.1407; MSA 3.996(107). The statutory grant of immunity created a new standard for individual government employee immunity in response to the Supreme Court's decision in *Ross*. Pursuant to the statute, an individual is immune from tort liability if the following three conditions are met:

> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.
>
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage. As used in this subdivision, "gross negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results. [MCL 691.1407(2); MSA 3.996(107)(2).]

Because the public-duty doctrine and the governmental immunity doctrine address and seek to advance the same public-policy interests, and because the Legislature gave express attention to those interests in its passage of MCL 691.1407; MSA 3.996(107), I see no reason to fail to comply with the Legislature's directive or to substitute judicial policy choices for the Legislature's policy choice.

### THE SPECIAL-RELATIONSHIP EXCEPTION

While I agree with the majority that the public-duty doctrine applies to this case, I do not agree that the special-relationship test enunciated in the lead opinion in *White* and defining the limits of the public-duty doctrine applies to this case.

Justice BRICKLEY, when articulating the Court's adoption of the *Cuffy*[1] special-relationship test, is careful to explain that the test is applicable only in situations where one alleges that the police have failed to provide protection. Justice BRICKLEY makes this point in no fewer than four separate instances within the lead opinion. Most importantly, Justice BRICKLEY expressly indicates that the Court is not deciding whether the *Cuffy* special-relationship test, or a separate test, should be applied to governmental

---

[1] *Cuffy v City of New York*, 69 NY2d 255; 513 NYS2d 372; 505 NE2d 937 (1987).

employees who are not police officers. *White, supra* at 315, n 3.

Justice BOYLE, in her concurring opinion in *White,* outlines her belief that the public-duty doctrine as well as the *Cuffy* special-relationship test apply only "in cases of nonfeasance." *White, supra* at 329. Indeed, she emphasizes that the *Cuffy* test is inherently inapplicable to cases where "an officer assumes an affirmative duty to act." *White, supra* at 329.

Justice CAVANAGH's opinion expresses his agreement "that the public-duty doctrine serves a useful function and should be continued" with respect to a police officer's alleged failure to protect an individual from the actions of a third party, but expressly dissents from "the lead opinion's definition of the special-relationship exception." *Id.* at 330. Indeed, Justice CAVANAGH expresses his conclusion that the public-duty doctrine is applicable only to "governmental safety professionals." *Id.* at 330, n 1. Finally, Justice CAVANAGH expresses the modifications he believes are warranted to the *Cuffy* test, but limits these modifications to the unique circumstance of a police officer's alleged "grossly negligent response" to a citizen's peril. *Id.* at 333.

In the case before this Court, we are faced with a defendant who is not a police officer and not a governmental safety professional. Further, plaintiff does not allege that Dr. Chung failed to protect an individual from the actions of a third party. Plaintiff does allege, however, that Dr. Chung assumed a duty in connection with rendering her professional opinion and that her conduct caused harm.

In other words, according to each of the referenced opinions rendered in *White,* the *Cuffy* test is inappli-

cable to the immediate case. The test articulated by the Court of Appeals in *White* appears to provide the best guidance available.

In that opinion, the Court of Appeals observed that "the cases in which claims were dismissed on the basis of the public duty doctrine have the common thread of involving the speculative possibility of a tortfeasor's injuring an unidentifiable member of the general public." *White, supra* at 462-463. The Court of Appeals then proceeded to state:

> The point made by *Harrison* [*v Director of Dep't of Corrections*, 194 Mich App 446; 487 NW2d 799 (1992)], and other cases cited by defendants, is that while the defendants in those cases might have had some reason to believe that members of the general public might be endangered by the actions of a third party, there was no identifiable person who was being endangered. That is, the potential for injury and the identification of the victim remain hypothetical until such time as the crime has occurred. [*White, supra* at 463.]

Clearly, on the facts of this case, the effect of Dr. Chung's medical opinion was not only to identify plaintiff as a liar but also to subject him to immediate prosecution for the murders of his wife and daughter. The potential for injury was evident at the time Dr. Chung rendered her opinion, and the identification of the party directly affected by Dr. Chung's opinion was neither hypothetical nor general; it was real and it was specific.

### WITNESS PRIVILEGE

The majority also observes, and I agree, that the law is well settled that statements made by a witness in the course of a judicial proceeding are absolutely

privileged. However, plaintiff's allegations in this case relate to Dr. Chung's opinion, which she rendered to the Wayne County Prosecutor's Office long before she was called as a witness in a judicial proceeding.

Dr. Chung rendered her opinion before Mr. Reno was charged, and that opinion was "the most important part" of the prosecutor's "decisionmaking process." The privilege is simply inapplicable factually to Dr. Chung's opinion.

### GROSS NEGLIGENCE

The trial court also concluded that plaintiff failed to present a material question of fact concerning whether Dr. Chung's conduct constituted gross negligence under the statute. A court may grant summary disposition under MCR 2.116(C)(10) only when the court is satisfied that reasonable jurors could not honestly reach different conclusions with regard to an issue of fact. *Vermilya v Dunham*, 195 Mich App 79; 489 NW2d 496 (1992). The two doctors who furnished affidavits in this case concluded that there was no anatomic or physiologic basis for Dr. Chung's opinion that Robin Reno could not have spoken to Kenneth Reno before she died. Dr. Mathog furnished his very specific and detailed opinion that Dr. Chung's conduct was "gross negligence." Given these opinions, I am persuaded that plaintiff has a case that should be resolved by a jury, and I would remand for trial.