Cavanagh, J.
(concurring). I join parts i and n of the majority opinion, which accurately discuss the pleadings. I also join the majority’s decision to reverse. I write separately, however, because I believe the majority goes beyond what is necessary to resolve the limited question before us. I would hold only that (1) the plaintiff successfully pleaded a claim upon which relief may be granted, and (2) that the defendant failed to overcome the plaintiffs amended pleadings because the defendant’s claim of nonstatutory immunity was predicated on inapplicable precedent.
I believe the majority’s discussion of the history and wisdom of the public duty doctrine is misplaced, given that we are examining a motion for summary disposition that tests only the sufficiency of the *143 pleadings. MCR 2.116(C)(8). Therefore, I would not delve into the statutory issues discussed by the majority. Instead, I would resolve this case on the basis of the narrow grounds discussed in this opinion.
i
MCR 2.116(C)(8) “tests the legal sufficiency of the claim on the pleadings alone to determine whether the plaintiff has stated a claim on which relief may be granted. The motion must be granted if no factual development could justify the plaintiffs’ claim for relief.” Spiek v Dep’t of Transportation, 456 Mich 331, 337; 572 NW2d 201 (1998). The plaintiff’s first amended complaint alleged that the defendant had engaged in gross negligence and active misconduct.[1] The most direct discussion of gross negligence and active misconduct can be found at the first paragraph 27 of the plaintiff’s amended complaint, which states as follows:
At all relevant times, Defendant Pauline Henderson committed acts of intentional misconduct, and active malfeasance, and gross negligence, which are not protected by the Public Duty Doctrine and/or governmental immunity including, but not limited to, the following:
a. Representing herself to be conducting official police business for improper purposes;
b. Using her authority as a Dearborn Police Dispatcher to verify the location of the suspect for improper purposes;
c. Actively withholding and concealing information from the authorities regarding the verified location of a felony suspect which she otherwise would have provided without hesitation;
*144 d. Purposefully accepting instruction from the suspect’s mother and criminal attorney in contravention of her duties;
e. Intentionally conspiring to keep the verified whereabouts of the suspect concealed despite actual knowledge of a police emergency;
f. Affirmatively abrogating her obligations in order to prevent the authorities from apprehending a known suspect in the commission of a brutal felony;
g. Intentionally abandoning her post as a police dispatcher in order to engage in misconduct;
h. Driving to Camp Dearborn to meet with the suspect;
i. Engaging in other active misconduct, gross negligence and/or intentional malfeasance which may become known prior to trial.
Further in support of her claim, the plaintiff repeatedly alleged that the defendant conspired and agreed to abrogate her duties as a police dispatcher and to conceal information from the authorities. The complaint also specifically alleged that the defendant’s active misconduct was “intended to prevent police authorities from saving a rape and kidnapping victim,” that the defendant’s intentional acts and omissions proximately resulted in the continued abuse of the plaintiff for an additional ten hours, and that damages resulted from the defendant’s acts and omissions.
n
In response to the allegations raised by the plaintiff, the defendant brought a motion for summary disposition pursuant to MCR 2.116(C)(8). In support of its position that no amount of factual development could justify the plaintiff’s claim, the defendant argued that defendant Henderson is protected by the public duty doctrine.
*145 THE BASIS OF DEFENDANT’S PUBLIC DUTY DOCTRINE CLAIM
The defendant’s brief in support of summary disposition claimed that “Under the public duty doctrine, a public employee owes a duty to the general public and not to any one individual unless a special relationship exists between the employee and the individual.” In the defendant’s view, the plaintiff in the present case failed to establish that a special relationship existed, citing White v Humbert, 206 Mich App 459; 522 NW2d 681 (1994), and Reno v Chung, 220 Mich App 102, 105; 559 NW2d 308 (1996), aff’d sub nom Maiden v Rozwood, 461 Mich 109; 597 NW2d 817 (1999). As such, the public duty doctrine would bar recovery. In response to the defendant’s motion for summary disposition, the plaintiff argued that the defendant was not protected by the public duty doctrine because the doctrine applies only to cases involving nonfeasance. The present complaint alleged active misconduct amounting to malfeasance. Further, the plaintiff alleged that the defendant’s actions arose out her relationship with David Wilke and his mother. Thus, plaintiff argued, the public duty doctrine would be inapplicable. The defendant filed a reply brief, arguing that the malfeasance versus nonfeasance argument advocated by the defendant was unsupportable because “[tjhere is no allegation or implication that Henderson took any dynamic step toward aiding David Wilke in his criminal activity.”
I cannot agree with the defendant that the public duty doctrine shields her from liability. I believe that the defendant applies the public duty doctrine too broadly, and ignores the plaintiff’s allegations that she called Camp Dearborn, confirmed Wilke’s presence *146 there, left work, drove to Camp Dearborn, and collaborated with Kondzer and Wilke’s attorney in addition to deciding to withhold information from the authorities.
As noted in the majority opinion, the public duty doctrine on which the defendant builds her argument was the subject of much discussion in White v Beasley, 453 Mich 308, 552 NW2d 1 (1996). There, in separate opinions, a majority of this Court adopted a formulation of the doctrine that provides that an officer may be shielded from an individual action for damages when the officer is being charged with failing to perform or inadequately performing a duty to the public. Yet, the opinion did not preclude the possibility that the officer nonetheless might owe an individual enforceable duty in tort.[2] Though in Beasley, this Court acknowledged a “special relationship exception” to the public duty doctrine, the Court did not hold that the doctrine is so broad that a public officer would automatically be protected from liability under the public duty doctrine when the officer’s abrogation of duties and personal involvement in the circumstances surrounding the plaintiff allegedly caused the plaintiff’s injuries to result.
Though the defendant tries to squeeze her case into the parameters of Beasley, her efforts must fail because this case is distinguishable from Beasley. The *147 plaintiff is not asserting that the defendant should be liable simply because the defendant was a police dispatcher who owed a general governmental duty to the plaintiff as a member of the public. Instead, the pleadings assert that the defendant became personally involved by acting upon special knowledge that she obtained because of a personal relationship with the assailant and his mother, and that the defendant chose to abrogate rather than perform her duties as a police dispatcher, despite the fact that she received information while on duty. According to the complaint, the relationship between the defendant, Kondzer, and Wilke made the defendant privy to special information about the alleged attack on the plaintiff. Thus, it was not the defendant’s position as a police dispatcher that gave rise to the alleged misconduct, it was her relationship with the assailant’s mother. Additionally, the complaint alleged various ways in which the defendant actively engaged in conduct that delayed apprehension of Wilke so that injury to the plaintiff resulted.
The allegations throughout the plaintiff’s amended complaint, and specifically listed in the first paragraph 27, state that the defendant knowingly and intentionally abrogated her duties as a police dispatcher and became involved in the case for personal reasons. I believe that the plaintiff’s repeated references to the relationship between the defendant, Kondzer, and Wilke, if accepted as true, would support a claim for a common-law cause of action. As such, I am not persuaded that this is the type of case in which the public duty doctrine of Beasley should be applied. Thus, the basis for the defendant’s MCR 2.116(C)(8) motion collapses, as does the decision of *148 the Court of Appeals. Therefore, I join the majority’s decision to reverse.
ni
I agree with the trial court that the defendant failed to establish that the plaintiff failed to state a claim upon which relief may be granted. As such, summary disposition was correctly denied. Therefore, I would reverse the decision of the Court of Appeals and remand this case for further proceedings.
Kelly, J., concurred with Cavanagh, J.

 The plaintiff labels her claims under the title, “Count I-Gross Negligence/Active Misconduct.”

 “[I]f the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public, not an individual injury, and must be redressed, if at all, in some form of public prosecution. On the other hand, if the duty is a duty to the individual, then a neglect to perform it, or to perform it properly is an individual wrong, and may support an individual action for damages.” [Beasley at 316, quoting 2 Cooley, Torts (4th ed), § 300, pp 385-386.]