HARRISON v DIRECTOR OF DEPARTMENT OF CORRECTIONS

HARRISON v DEPARTMENT OF CORRECTIONS

Docket Nos. 126819, 126820. Submitted March 11, 1992, at Lansing.
Decided June 1, 1992, at 9:15 A.M. Leave to appeal sought.

David Harrison, as personal representative of the estate of Steven
D. Harrison, deceased; Harry Harrison, as personal representa-
tive of the estate of Jerry B. Harrison, deceased; and Dale,
Debra, Jennifer, and Lisa Dolinger brought an action in the
Washtenaw Circuit Court against Robert Brown, Director of the
Department of Corrections; Perry Johnson, a former director of
the Department of Corrections and deputy director of the
Bureau of Field Services; Bill Hudson, Richard Walbrecq, and
Howard Grossman, members of the parole board; and Thomas
Koehler, warden of Marquette Branch Prison. The plaintiffs
also brought an action in the Court of Claims against the
Department of Corrections, the Bureau of Pardons and Paroles,
and the Bureau of Field Services. In both actions, the plaintiffs
sought damages in tort for the murders of the decedents, the
attempted murder of Dale Dolinger, and the assaults of the
other Dolingers committed by Paul R. Byars, a parolee. The
plaintiffs alleged that because of an improper calculation or
award of credits for good time and special good time, Byars had
been granted parole before being eligible. The circuit court,
William F. Ager, J., after allowing consolidation of the actions,
granted summary disposition for the defendants and dismissed
the actions. The plaintiffs appealed, and their appeals were
consolidated.

The Court of Appeals *held:*

1. The trial court correctly ruled that the action against the
state agencies was barred by MCL 691.1407; MSA 3.996(107),
which grants immunity from tort liability to governmental
agencies engaged in the exercise or discharge of a governmen-

REFERENCES

Am Jur 2d, Municipal, County, School, and State Tort Liability
§§ 138-144; Penal and Correctional Institutions § 212.
Immunity of public officer from liability for injuries caused by
negligently released individual. 5 ALR4th 773.

tal function. The agencies were so engaged in releasing Byars from prison and thus immune.

2. The trial court properly dismissed the action against Brown and Johnson in their capacities as directors of the Department of Corrections. Pursuant to *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567 (1984), these defendants, as the highest executive officials of the department during their tenures, had absolute immunity from tort liability because they acted within their executive authority.

3. The trial court erred in granting summary disposition to the remaining defendants on the basis of governmental immunity. As lower level officials, these defendants could claim immunity pursuant to *Ross* only if they acted within the scope of their authority in good faith and performed discretionary, as opposed to ministerial, acts. The plaintiffs presented evidence indicating that because these defendants awarded good-time credit in violation of governing statutes, they may have exceeded their authority and failed to act in good faith. Nevertheless, summary disposition in their favor is proper on the ground that the plaintiffs failed to state a claim on which relief could be granted. A person has no duty to protect another who is endangered by the conduct of a third person unless there is a special relationship with either the victim or the person causing the injury. In this case, the defendants had no special relationship with either the plaintiffs or Byars. The plaintiffs had no contact with the defendants and therefore could not have relied on any explicit assurances the defendants' otherwise might have made concerning their safety. The defendants' relationship with Byars was no different from those with other prisoners or parolees.

Affirmed.

1. GOVERNMENTAL IMMUNITY — DEPARTMENT OF CORRECTIONS — LIABILITY FOR DEATH OR INJURY CAUSED BY PAROLEE.

The Department of Corrections and its director are immune from tort liability for death or injury caused by the criminal conduct of a parolee who, because of an improper calculation or award of good-time credits, is granted parole before the actual date of eligibility.

2. NEGLIGENCE — PRISON WARDENS — PAROLE BOARD MEMBERS — DEATH OR INJURY CAUSED BY PAROLEE.

A prison warden or a parole board member does not owe a duty of care to a person injured or killed as a result of the criminal conduct of a parolee where there is no contact between the warden or parole board member and the person, or a relation-

ship between the warden or parole board member and the parolee different from those with other prisoners or parolees.

*Hooper, Hathaway, Price, Beuche & Wallace* (by *Mark R. Daane* and *Robert W. Southard*), for the plaintiffs.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, and *Stuart H. Freeman* and *Michael C. McDaniel,* Assistant Attorneys General, for the defendants.

Before: SHEPHERD, P.J., and SAWYER and CONNOR, JJ.

SHEPHERD, P.J. In these consolidated cases, plaintiffs appeal as of right from the March 1, 1990, circuit court order granting summary disposition in favor of defendants pursuant to MCR 2.116(C)(7), claim barred because of immunity granted by law, and MCR 2.116(C)(8), failure to state a claim. We affirm and hold that defendant—either state agencies, officials of the Department of Corrections, or members of the parole board—may not be held liable for violent murders committed by a prisoner released on parole before being eligible for parole consideration. We conclude that for such liability to exist, it would have to be authorized by the Legislature.

In the early morning hours of July 19, 1985, Paul Ray Byars, while on parole, broke into the home of Dale and Debra Dolinger in Ypsilanti, Michigan. Upon entering, Byars brutally murdered two thirteen-year-old boys, Jerry Bruce Harrison and Steven D. Harrison, attempted to murder Dale Dolinger, and placed Debra, Jennifer, and Lisa Dolinger in fear for their lives. Byars had been paroled in August 1984 after serving approxi-

mately ten years of a twenty- to thirty-five-year sentence imposed in 1974 for rape.

Plaintiffs filed the present actions against the various defendants, alleging that they intentionally and negligently violated the law in paroling Byars five or six years before he was eligible. Plaintiffs contend that defendants' actions constituted the proximate cause of the murders committed by Byars. Plaintiffs further claim that defendants were engaged in ultra vires activities and thus were not performing governmental functions. Robert Brown is a former director of the Michigan Department of Corrections (MDOC); Perry Johnson was also a director of the MDOC, as well as a director of the Bureau of Field Services; Thomas Koehler was the warden of the Marquette Branch Prison, where Byars was imprisoned; Howard Grossman, Bill Hudson, and Richard Walbrecq were members of the parole board responsible for the release of Byars.

In reviewing a motion brought pursuant to MCR 2.116(C)(7), a court must consider all affidavits, pleadings, depositions, admissions, and documentary evidence filed or submitted by the parties. MCR 2.116(G)(5); *Wade v Dep't of Corrections,* 439 Mich 158, 162-163; 483 NW2d 26 (1992); *Chivas v Koehler,* 182 Mich App 467, 471; 453 NW2d 264 (1990). The plaintiff's complaint is reviewed to determine whether facts have been pleaded justifying a finding that recovery in tort is not barred by governmental immunity. *Pawlak v Redox Corp,* 182 Mich App 758, 763; 453 NW2d 304 (1990). A motion for summary disposition pursuant to MCR 2.116(C)(7) should not be granted unless no factual development could provide a basis for recovery. *Markis v Grosse Pointe Park,* 180 Mich App 545, 551; 448 NW2d 352 (1989).

A motion under MCR 2.116(C)(8), for failure to

state a claim upon which relief can be granted, tests the legal sufficiency of a claim by the pleadings alone. MCR 2.116(G)(5); *Wade, supra.* The court must accept as true all well-pleaded factual allegations, as well as any reasonable inferences or conclusions that can be drawn from them. *Hutchinson v Allegan Co (On Remand),* 192 Mich App 472, 475; 481 NW2d 807 (1992). The motion should be granted only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery. *Wade, supra.*

Pursuant to MCL 691.1407; MSA 3.996(107), defendant state agencies are immune from tort liability if they are "engaged in the exercise or discharge of a governmental function" at the time the tort occurs. In *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567, 633; 363 NW2d 641 (1984), the Court stated that a governmental function is an "activity which is expressly or impliedly mandated or authorized by constitution, statute, or other law." *Id.,* p 591. In this case, the Department of Corrections, the Bureau of Pardons and Paroles, and the Bureau of Field Services were authorized to release prisoners pursuant to MCL 791.201 *et seq.*; MSA 28.2271 *et seq.* and hence were engaged in the exercise or discharge of a governmental function. Because there is no intentional tort exception to governmental immunity, *Smith v Dep't of Public Health,* 428 Mich 540, 593; 410 NW2d 749 (1987), aff'd sub nom *Will v Dep't of State Police,* 491 US 58; 109 S Ct 2304; 105 L Ed 2d 45 (1989), defendant state agencies were immune from liability even if the release of Byars may have resulted in an intentional tort. Thus, the trial court properly granted defendant state agencies summary disposition pursuant to MCR

2.116(C)(7) on the ground of governmental immunity.

Before 1986, the law of governmental immunity, as it related to individual officers, employees, and agents, was "a creature of judicial decision-making." *Ross, supra,* p 629. Although standards of individual governmental immunity are now provided under MCL 691.1407; MSA 3.996(107), as amended by 1986 PA 175, the statute does not apply to causes of action "arising" before July 1, 1986. 1986 PA 175, § 3. The amended statute grants immunity to individual defendants except for acts of gross negligence.

A cause of action "arises" when the plaintiff's claim accrues, not when it is filed. *Abraham v Jackson,* 189 Mich App 367, 370; 473 NW2d 699 (1991). Because the cause of action accrued on July 19, 1985, the date on which Byars committed the murders, the amended statute is inapplicable. Thus, the issue is considered under the rules articulated in *Ross,* where the Court distinguished two categories of individual governmental immunity.

Under the first test set forth in *Ross,* p 633, "judges, legislators, and the highest executive officials of all levels of government are absolutely immune from all tort liability whenever they are acting within their judicial, legislative, or executive authority." Highest executive officials may qualify for absolute immunity because they have broad-based jurisdiction or extensive authority similar to that of a judge or legislator. *Chivas, supra,* p 471.

In addition, *Ross, supra,* pp 633-634, states:

> Lower level officials, employees, and agents are immune from tort liability only when they are
> 1) acting during the course of their employment and acting, or reasonably believe they are acting, within the scope of their authority;

2) acting in good faith; and

3) performing discretionary, as opposed to ministerial acts.

Under this test, no individual immunity exists for *ultra vires* activities.

Discretionary acts involve personal deliberation, decision, and judgment. *Id.,* pp 634, 635. Ministerial acts involve the execution of a decision entailing minor decision making where the individual has little or no choice. In determining whether acts are discretionary or ministerial, the focus is on the specific acts complained of, rather than the general nature of the activity. *Canon v Thumudo,* 430 Mich 326, 334; 422 NW2d 688 (1988).

In this case, Robert Brown and Perry Johnson, former directors of the MDOC, occupied that department's highest executive position. Because these defendants were acting within their broad-based executive authority, they were entitled to absolute immunity under *Ross. Chivas, supra,* p 471. Therefore, the trial court properly granted defendants Brown and Johnson summary disposition pursuant to MCR 2.116(C)(7) based upon governmental immunity.[1]

The remaining individual defendants do not qualify as "highest executive officials." As the former warden of the Marquette Branch Prison,

---

[1] Although the record is not entirely clear whether Perry Johnson was acting as the director of the MDOC or the director of the Bureau of Field Services at the time of the events in question, summary disposition is proper in either instance. As the director of the MDOC, he was entitled to absolute immunity under *Ross* as "the highest executive official." Thus, summary disposition is appropriate under MCR 2.116(C)(7). As the director of the Bureau of Field Services, he would have qualified as a "lower level official." Although he would not have been entitled to immunity under *Ross* while acting in this capacity, summary disposition is proper under MCR 2.116(C)(8) insofar as plaintiffs failed to allege the existence of a public duty owed to them or their decedents, as discussed in the following section of this opinion.

defendant Thomas Koehler qualified as a "lower level official" under *Ross. Marley v Huron Valley Men's Facility Warden,* 165 Mich App 78, 82; 418 NW2d 430 (1987). Defendants Howard Grossman, Bill Hudson, and Richard Walbrecq, members of the parole board, were likewise properly considered as "lower level officials" for the purposes of governmental immunity.

In arguing that these individual defendants are not entitled to governmental immunity, plaintiffs allege that defendants engaged in ultra vires activities, because they lacked statutory authority to release Byars until he had served his minimum sentence of twenty years reduced by any good-time credits to which he was entitled. Further, plaintiffs allege that these defendants did not act in good faith, and that they were performing ministerial, as opposed to discretionary, acts.

Specifically, plaintiffs allege that defendant Koehler was not acting, or did not reasonably believe that he was acting, within the scope of his authority when he computed Byar's "good time allowance" under MCL 800.33; MSA 28.1403. Plaintiffs maintain that defendant Koehler automatically awarded Byars all of his good-time credit at the beginning of his sentence, rather than making him earn it, as required under MCL 800.33(6); MSA 28.1403(6). This automatic award of good-time credit meant that Byars was given too much credit, thereby improperly shortening his term. Further, plaintiffs allege that defendant Koehler, in contravention of MCL 800.33(2); MSA 28.1403(2), gave Byars good-time credit during a time he committed major infractions of prison rules. Plaintiffs also allege that defendant Koehler did not have authority to award Byars good-time credit when his sentence was reduced under the Governor's exercise of his authority pursuant to

the (now repealed) Prison Overcrowding Emergency Powers Act. MCL 800.71 *et seq.*; MSA 28.1437(1) *et seq.* Plaintiffs also maintain that defendant Koehler exceeded his statutory authority under MCL 800.33(9); MSA 28.1403(9) by automatically awarding Byars "special good time" credits (fifty percent of regular good-time credits) without the consent and approval of the director of the Department of Corrections. Because defendant Koehler exceeded his statutory authority in awarding good-time credits, Byars, when released, had not served his minimum sentence as it would have been had it been reduced with proper credits for good time. Thus, plaintiffs allege that defendants Grossman, Hudson, and Walbrecq had no jurisdiction under MCL 791.234(1); MSA 28.2304(1) to parole Byars because he was not eligible for parole.

Further, plaintiffs allege that defendants' actions were not performed in good faith because they knew, or should have known, that their actions in awarding good-time credit were in violation of statute. Specifically, plaintiffs cite audit reports prepared by the Office of the Auditor General, dated October 20, 1983, criticizing the Department of Corrections for violating the law by improperly awarding good-time credits. In addition, an audit report, dated July 12, 1984, which covered the period from September 1978 through October 1983, states that the award of good-time credits for that portion of the sentence that would not have to be served pursuant to the Prison Overcrowding Emergency Powers Act was inconsistent with the good-time credit statute. Plaintiffs further allege that defendants Grossman, Hudson, and Walbrecq failed to investigate whether good-time credit was properly being awarded to Byars. Moreover, plaintiffs contend that defendants ig-

nored the diagnosis of a prison psychologist just before Byars' release that Byars was a psychopath "who was not concerned about the values and standards of society."

Finally, plaintiffs allege that defendants' acts were not discretionary, simply because they did not have any authority to parole Byars when they did. The alleged absence of statutory authority implies that defendants had no power with which to perform discretionary acts involving personal deliberation, decision, and judgment.

After reviewing the documentary evidence submitted by the parties, we believe that the trial court erroneously granted these defendants summary disposition pursuant to MCR 2.116(C)(7). In this instance, plaintiffs alleged sufficient facts that these individual defendants are not entitled to immunity because they did not satisfy any of the three requirements set forth in *Ross* for governmental immunity for lower level officials. In asserting that these defendants were not acting, or did not reasonably believe they were acting, within the scope of their authority when they paroled Byars, plaintiffs allege facts supporting a finding that Koehler, Grossman, Hudson, and Walbrecq were acting without statutory authority. Moreover, plaintiffs alleged that these defendants ignored warnings issued by the Office of Auditor General concerning violations of the parole process. The absence of good faith was particularly striking in the case of defendant Walbrecq, who admitted in deposition testimony that he did not even know how good-time credit or special good-time credit was awarded to a prisoner in Michigan. Having alleged sufficient facts that defendants did not have authority to parole Byars when they did, plaintiffs supported the allegation that defendants lacked any discretion, and thus were not perform-

ing discretionary, as opposed to ministerial acts. Thus, we conclude that the trial court improperly granted these defendants summary disposition pursuant to MCR 2.116(C)(7) on the ground of governmental immunity.

Although the trial court's order granted defendants summary disposition under MCR 2.116(C)(7) and (8), the trial court did not state in its opinion whether plaintiffs alleged a duty owed by defendants under subrule C(8). Thus, we will next consider whether summary disposition was proper under subrule C(8).

To establish a prima facie case of negligence, a plaintiff must prove: (1) that the defendant owed a duty to the plaintiff; (2) that the defendant breached the duty; (3) that the defendant's breach of duty was the proximate cause of the plaintiff's damages; and (4) that the plaintiff suffered damages. *Chivas, supra,* p 475. A duty is a legally recognized obligation to conform to a particular standard of conduct toward another. *Id.; Farwell v Keaton,* 396 Mich 281, 286; 240 NW2d 217 (1976). The question whether a duty exists is one of law to be decided by the court. *Chivas, supra.*

As a general rule, there is no duty to protect an individual who is endangered by the conduct of a third person. *Id.* In determining whether a legal duty should be imposed, the trial court should balance the societal interests involved, the severity of the risk, the burden upon the defendant, the likelihood of occurrence, and the relationship between the parties. *Id.* However, a duty of reasonable care may arise where one stands in a special relationship with either the victim or the person causing the injury. *Id.* Where the duty of a public official arises from his official authority, the duty is for the benefit of the public at large. *Massey v Dep't of Corrections,* 182 Mich App 238, 241; 451

NW2d 869 (1990). A duty is owed to a specific individual only when performance would affect the individual in a manner different in kind from the way performance would affect the public. *Id.*

In the case at bar, plaintiffs allege that a duty of care could be imposed on defendants because they had a special relationship with plaintiffs or plaintiffs' decedents. Specifically, plaintiffs allege that a special relationship existed because defendants returned Byars to his mother's house in a neighborhood of Ypsilanti where Byars had committed rape in 1974. Before releasing Byars, defendants warned the rape victim, whose house was ten houses away from that of Byars' mother. In view of the fact that the rape victim and the Dolingers lived on the same block, only a few houses away from one another, and that the Dolinger house was only three houses away from that of Byars' mother, plaintiffs allege that defendants had a duty to prevent Byars from harming others in the neighborhood, including plaintiffs and plaintiffs' decedents. Moreover, plaintiffs allege that defendants had a special relationship with Byars because they had control of him and could oversee and restrict his behavior while he was on parole.

In determining whether a special relationship existed, we note that there are no Michigan cases defining a test or setting forth the requirements of a special relationship. A perusal of case law in other jurisdictions reveals various approaches requiring at least some contact between the government agency or official and the victim and also justifiable reliance on the part of the victim upon the promises or actions of the governmental agency or official. For example, in *Sawicki v Village of Ottawa Hills,* 37 Ohio St 3d 222, 231; 525 NE2d 468 (1988), a case involving a wrongful death and survivorship action against a police

department, the Supreme Court of Ohio adopted the four-part test set forth in *Cuffy v City of New York,* 69 NY2d 255, 260; 513 NY Supp 2d 372; 505 NE2d 937 (1987). In *Cuffy,* which involved a municipality's duty to provide police protection, the court set forth the elements of a special relationship as follows: "(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking."

Similarly, in *Chambers-Castanes v King Co,* 100 Wash 2d 275, 286; 669 P2d 451 (1983), a case involving alleged negligence by the police, the Supreme Court of Washington stated that a special relationship is present if (1) there is privity between the police and the victim that sets the victim apart from the general public and (2) there are express assurances of protection that lead to reliance by the victim.

The Court of Appeals of the District of Columbia in *Platt v District of Columbia,* 467 A2d 149, 151 (DC App, 1983) adopted a two-pronged test for a special relationship set forth in *Florence v Goldberg,* 44 NY2d 189; 404 NYS2d 583; 375 NE2d 763 (1978), under which a plaintiff must show: "(1) a direct contact or continuing contact between the victim and the governmental agency or official; and (2) a justifiable reliance on the part of the victim." As explained in *Warren v District of Columbia,* 444 A2d 1, 10-11 (DC App, 1981) (en banc), the first prong requires "some form of privity" between the governmental agency or official and the victim that sets the victim apart from the

general public, whereby the victim becomes a "reasonably foreseeable plaintiff."

In addition, the court in *Marvin v Chicago Transit Authority,* 113 Ill App 3d 172, 176; 68 Ill Dec 786; 446 NE2d 1183 (1983), in discussing the general requirements of the "special duty" exception, whereby the police owe a special duty to an individual, as opposed to the public as a whole, set forth a four-part test: "(1) the municipality must be uniquely aware of the particular danger or risk to which plaintiff is exposed; (2) there must be allegations of specific acts or omissions on the part of the municipality; (3) the specific acts or omissions must be either affirmative or wilful in nature; and (4) the injury must occur while the plaintiff is under the direct and immediate control of employees or agents of the municipality."

Another way of establishing the existence of a special relationship was suggested in *Turner v District of Columbia,* 532 A2d 662, 667 (DC App, 1987), which noted that a special relationship may be established by a statute prescribing "mandatory acts clearly for the protection of a particular class of persons rather than the public as a whole." No such statute exists in Michigan.

Applying any of the above tests to the facts of this case, we note that plaintiffs would have failed to establish a special relationship, because the facts described, if proved, would not show that they or their decedents had any kind of contact with defendants, let alone that plaintiffs justifiably relied upon any explicit assurances from defendants. We must conclude that plaintiffs have not alleged facts from which it could be inferred that defendants owed plaintiffs or their decedents a duty of care whose performance would have affected them in a manner different in kind than the

way it would have affected the general public. *Massey, supra,* p 241.

Nor do we find that a special relationship existed between defendants and Byars. Defendants were responsible for parolees generally, and no particular special relationship was alleged between defendants and Byars that was different from the relationship between the warden of a prison and members of the parole board and the general population of parolees (See *Chivas, supra,* pp 475-476, where this Court declined to find a special relationship between defendant prison guards and escaped inmates, likening the situation to that of a police officer who owes a duty generally to the public and not to a specific individual, unless the officer has a special relationship with the individual, e.g., police brutality against a citizen). Thus, we must conclude that defendants Koehler, Grossman, Hudson, and Walbrecq are entitled to summary disposition pursuant to MCR 2.116(C)(8) because plaintiffs' claims are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery.

In summary, although all defendants breached their duty to the general public, we conclude that the trial court properly granted defendant state agencies and defendants Brown and Johnson summary disposition pursuant to MCR 2.116(C)(7) on the ground of governmental immunity. Although the trial court improperly granted defendants Koehler, Grossman, Hudson, and Walbrecq summary disposition under subrule C (7), we conclude that the trial court's order dismissing the claims against these defendants was proper pursuant to MCR 2.116(C)(8).[2]

---

[2] Because we have concluded that plaintiffs failed to state a claim against these defendants upon which relief can be granted, we need not decide whether members of the parole board should be considered

Affirmed.

---

the "functional equivalent of judges," and thus entitled to absolute immunity under *Ross*. Resolving this question, which the trial court did not consider, would not change the result of this case. Nor do we comment on whether the actions taken by the defendants who were members of the parole board in paroling Byars would constitute gross negligence under MCL 691.1407; MSA 3.996(107), as amended by 1986 PA 175, thus making them ineligible for immunity under the statute presently in effect. We note that even if defendants' conduct were grossly negligent, the issues of duty and special relationship would still exist.