# STATE OF MICHIGAN

# COURT OF APPEALS

TIMM SMITH and MARIA C. HOWARD-SMITH,

        Plaintiffs-Appellants,

v

TOWNSHIP OF HOLLY,

        Defendant-Appellee.

UNPUBLISHED
November 19, 2015

No. 323421
Oakland Circuit Court
LC No. 2010-113821-CZ

Before: JANSEN, P.J., and MURPHY and RIORDAN, JJ.

PER CURIAM.

Plaintiffs, Timm Smith and Maria C. Howard-Smith, husband and wife, appeal as of right the trial court's order granting summary disposition in favor of defendant, Township of Holly. Plaintiffs also appeal the order of the trial court dividing the property at issue in this case pursuant to defendant's proposed survey. We affirm.

## I. FACTUAL BACKGROUND

We previously heard and summarized the relevant factual background of this case in *Smith v Township of Holly*, unpublished opinion per curiam of the Court of Appeals, issued August 13, 2013 (Docket Nos. 306406, 306758):

> This matter involves certain property located at 1031 South Holly Road, Fenton, MI 48430. The property has a complicated chain of title and possession. Plaintiffs first gained a property interest in this land in 1989, when they entered into a land contract for the purchase of just under 20 acres of vacant land at this location. Over the next 15 years plaintiffs engaged in a series of property transfers among family members. The transfers involved a central ten-acre portion of the parcel and two five-acre sections. However, neither plaintiffs nor their family members ever actually split the property, so despite the numerous property transfers, the near 20 acres remained undivided and retained one tax identification number. Eventually, all of the land that had been transferred to family members was returned to plaintiffs, such that they again owned the entire 20-acre parcel.

-1-

On December 7, 2004, plaintiffs took out a mortgage on the central 10 acres of property, on which sat their house, in the amount of $137,600. The mortgage did not apply to the two five-acre portions of property. The mortgagee was Mortgage Electronic Registration Systems, Inc. (MERS), and the lender was Republic Bank. Plaintiffs began to have difficulty paying their mortgage and, eventually, MERS foreclosed by advertisement on plaintiffs' 10 acres of property and a sheriff's sale was held on May 27, 2008. MERS was the highest bidder at the sheriff's sale in the amount of $138,502.78. The recording included information that the "[t]he redemption period shall be 12 months from the date of sale[,]" namely, May 27, 2009.

On June 3, 2008, MERS quit claimed the 10-acre property to Federal National Mortgage Association (FNMA). On May 21, 2009, FNMA quit claimed the 10-acre property to PHH Mortgage Corporation (PHH). PHH sought possession of the 10-acre property from plaintiffs and on July 9, 2009, obtained a consent judgment against plaintiffs in the district court. The district court judgment stated that an order of eviction would be issued against plaintiffs if they did not vacate the property by August 10, 2009. Thereafter, plaintiffs voluntarily left the property within 30 days. On November 19, 2009, PHH gifted, via quit claim deed, the 10-acre property to defendant. Plaintiffs moved their family back into the house located on the subject 10 acres in late November 2010 by entering through an unlocked window. [*Id*. at 2.]

After the aforementioned events, plaintiffs brought the instant suit, requesting that the trial court quiet title in their favor and find a violation of the Land Division Act, MCL 560.101 *et seq*., wrongful eviction and forcible entry and detainer, slander of title, and constructive eviction and trespass. See *id*. at 2-3. Defendant filed a motion for summary disposition, arguing that the doctrine of laches precluded plaintiffs from quieting title to the 10-acre property in their favor. *Id*. at 2.[1] The trial court agreed and granted defendant's motion for summary disposition, holding that plaintiffs' claims was barred by the doctrine of laches. *Id*. at 3. However, the court refused to enter an order quieting title to the 10-acre parcel in favor of defendant. *Id*.

On appeal, we affirmed the trial court's decision to dismiss plaintiffs' claims regarding the 10-acre portion of property based on the doctrine of laches, but we remanded the case to the trial court for entry of an order quieting title of the 10-acre parcel in favor of defendant and proper division of the property. *Id*. at 4-7. We also instructed the trial court "to consider plaintiffs' claims involving the two five-acre portions of land that still belong to plaintiffs." *Id*. at 2, 5.

On remand, defendant argued that the property should be divided along the lines that were already established through plaintiffs' informal division of land and mortgage of the central 10 acres. Accordingly, it prepared a proposed property division under which plaintiffs received

---

[1] Plaintiffs also filed a motion for partial summary disposition, which the trial court denied. *Id*. at 2-3.

easements across the 10-acre parcel to access the remaining five-acre parcels. Plaintiffs asserted that a "proper division" under this Court's previous opinion required "actual access" to the remaining five-acre parcels, separate parcel IDs for each parcel, and building permits for each five-acre parcel. After hearing the parties' arguments, the trial court entered an order adopting defendant's proposed division in accordance with the survey, legal descriptions, and easements prepared by defendant. The trial court also entered an order quieting title to the 10-acre portion in favor of defendant.

Next, defendant moved for summary disposition under MCR 2.116(C)(8) and (C)(10). It argued that the remaining counts of plaintiffs' amended complaint were not viable claims because they were previously disposed of, barred by governmental immunity, or solely related to the parcel of land owned by defendant, not the remaining five-acre parcels. Plaintiffs also moved for partial summary disposition pursuant to MCR 2.116(C)(10), arguing that there was no genuine issue of material fact that the Land Division Act had been violated, that governmental immunity did not apply to intentional torts, and that it had properly pleaded and proven their remaining tort claims. However, plaintiffs later filed a response to defendant's motion for summary disposition, in which they asserted that their remaining claims pertained to the remaining five-acre parcels in their possession, and that there was a genuine issue of material fact regarding whether defendant's acts were intentional for purposes of governmental immunity.

The trial court denied plaintiffs' motion for partial summary disposition and granted defendant's motion. It held that plaintiffs' claim under the Land Division Act claim had been disposed of, that defendant was entitled to governmental immunity as to plaintiffs' remaining claims, and that plaintiffs had failed to state a claim upon which relief could be granted in light of the fact that their claims were solely related to the 10-acre parcel now owned by defendants.

## II. LAND DIVISION

First, plaintiffs argue that the trial court erred in adopting defendant's proposed land division because it violated the Land Division Act and local ordinances. We disagree.

### A. STANDARD OF REVIEW

We review *de novo* a trial court's ultimate decision in an action to quiet title, but we review for clear error the factual findings underlying its decision. *Jonkers v Summit Twp*, 278 Mich App 263, 265; 747 NW2d 901 (2008). "In resolving an issue of statutory interpretation, our primary aim is to effect the intent of the Legislature. We first examine the language of the statute and if it is clear and unambiguous, we assume that the Legislature intended its plain meaning, and we enforce the statute as written." *Martin v Beldean*, 469 Mich 541, 546; 677 NW2d 312 (2004) (quotation marks and citation omitted).

### B. ANALYSIS

Previously, this Court ordered, "On remand, the trial court shall . . . direct the parties to take whatever steps are necessary to properly divide the 20-acre parcel." *Smith*, unpub op at 7. The parties agree that this directive required the division to be proper under the requirements of the Land Division Act, MCL 560.101 *et seq.*, and relevant local ordinances. On appeal, the parties specifically focus on MCL 560.109(1), which provides that "[a] complete application for

-3-

a proposed division shall be approved if, in addition to the requirements of section 108, all of the . . . requirements" under MCL 560.109(1)(a) through (h) are met. On appeal, plaintiffs only challenge whether MCL 560.109(1)(e)—which requires the remaining parcels to be "accessible"—was satisfied by the land division in this case. The definition of "accessible," for purposes of the Land Division Act, is as follows:

> (j) "Accessible", in reference to a parcel, means that the parcel meets 1 or both of the following requirements:
>
> (*i*) Has an area where a driveway provides vehicular access to an existing road or street and meets all applicable location standards of the state transportation department or county road commission under 1969 PA 200, MCL 247.321 to 247.329, and of the city or village, or has an area where a driveway can provide vehicular access to an existing road or street and meet all such applicable location standards.
>
> (*ii*) Is served by an existing easement that provides vehicular access to an existing road or street and that meets all applicable location standards of the state transportation department or county road commission under 1969 PA 200, MCL 247.321 to 247.329, and of the city or village, or can be served by a proposed easement that will provide vehicular access to an existing road or street and that will meet all such applicable location standards. [MCL 560.102(j).]

Plaintiffs claim that the property division was improper for two reasons. First, we will address plaintiffs' argument arising out of Holly Township Ordinances, § 14-35(b), which is incorporated by reference under the definition of "accessibility" in MCL 560.102(j). § 14-35(b) provides:

> Access. All parcels, intended to be developed shall meet township requirements for access as set forth in section 32-93(b)(5), or as that section may be amended from time to time. Applicants are notified that parcels which do not meet the zoning requirements set out in chapter 32 for access will not be issued a building permit. Applicants requesting land divisions not meeting zoning requirements set out in chapter 32 for access shall submit a fully executed affidavit acknowledging their understanding that a building permit will not be issued for a parcel which does not comply with zoning requirements set out in chapter 32 for access.

In particular, plaintiffs argue that the land division is invalid because they never submitted an affidavit in accordance with § 14-35(b). In the trial court, plaintiffs did not raise this issue or assert that such an affidavit was required under the circumstances of this case. "An issue is not properly preserved for appeal if not raised in the circuit court, and we need not address arguments first raised on appeal." *Green v Ziegelman*, 282 Mich App 292, 300; 767 NW2d 660 (2009). Nevertheless, reversal of the trial court's adoption of defendant's proposed land division is not warranted.

An *application* requesting a land division was not required or appropriate in this case. It is apparent that our previous opinion adopted the land division that was previously, albeit

informally, adopted by plaintiffs before they mortgaged the central 10 acres of the 20-acre parcel. Our opinion expressly states, "res judicata applies to the issue of the ownership *of the central 10 acres*, and defendant is entitled to an order quieting title to *the 10 acres* in its favor. On remand, the trial court shall also direct the parties to take whatever steps are necessary to properly divide the 20-acre parcel." *Smith*, unpub op at 7 (emphasis added). An earlier statement of our holding also states:

> We affirm the trial court's grant of summary disposition in favor of defendant on plaintiff's [sic] action to quiet title but remand for the trial court to enter an order quieting title of *the central 10 acres* to defendant and directing the parties to take any necessary action to *correspondingly divide* the 20-acre parcel, and also to consider plaintiffs' claims involving the two five-acre portions of land that still belong to plaintiffs. [*Id*. at 1-2 (emphasis added).]

When our remand directives are read in context with each other, it is clear that we directed the parties to take whatever steps are necessary in order to divide the 20-acre parcel in a manner consistent with the holding of our opinion, *i.e.*, that defendant has title to the central 10 acres. See *id*.

Accordingly, an *application* for approval of a land division was not implicated in this case because we already had ordered that the land be divided consistent with defendant's rightful ownership of the central 10 acres. Thus, plaintiffs were not "[a]pplicants requesting land divisions" for purposes of the Holly Township Ordinances. See Holly Township Ordinances, §14-35(b). Further, given that the boundaries of the land division already had been established, an affidavit confirming plaintiffs' understanding that a building permit will not be issued for parcels that do not meet the applicable zoning requirements was not required before the trial court finalized the land division. Here, the land division was not being completed at the request of an owner of a parcel, as plaintiffs no longer owned the 10-acre portion, and plaintiffs clearly did not wish to divide the parcel. See Holly Township Ordinances, § 14-33(a) ("The *owner* of any acreage parcel who *desires* to divide the parcel shall make written application for the division with the township." [Emphasis added.]).[2]

Even if we assume, arguendo, that an affidavit was required in this case, plaintiffs' filings in the trial court clearly indicate that plaintiffs were, in fact, aware that the access requirements under chapter 32 had to be fulfilled before a building permit would be issued for either of the remaining five-acre parcels. It is apparent that the purpose of the affidavit requirement, i.e., "acknowledging their understanding that a building permit will not be issued for a parcel which does not comply with zoning requirements set out in chapter 32 for access," Holly Township Ordinances, § 14-35(b), already was fulfilled in this case. Thus, any purported error in this regard was harmless. See MCR 2.613(A) ("[A]n error or defect in anything done or omitted by the court . . . is not ground for . . . vacating, modifying, or otherwise disturbing a judgment or

---

[2] It is apparent that plaintiffs did not consider themselves to be *applicants* under the ordinance, as their brief submitted to the trial court did not conform to the application content requirements under Holly Township Ordinances, § 14-33(b).

order, unless refusal to take this action appears to the court inconsistent with substantial justice.").

Second, plaintiffs claim that the land division was improper because it rendered the two five-acre parcels unbuildable because the parcels do not meet the requirements for obtaining a building permit. See Holly Township Ordinances, § 32-93(b)(5). They contend that the parcels are now essentially worthless, and "a 'proper' division of land will never intend to result in parcels that are unbuildable." As such, they assert, pursuant to § 32-93(b)(5), that "a 'proper' division' of a parcel of property pursuant to Holly Township ordinances requires that the parcels all have direct access to a public or private road for those parcels to be deemed buildable." However, plaintiffs have identified no provision of the Land Division Act or the Holly Township ordinance, apart from the provisions discussed *supra*, that *requires* all resulting parcels to be buildable or fulfill the requirements under § 32-93(b)(5), and we have found no basis for concluding that the relevant "test" for whether a division is proper is "[p]laintiffs' ability to apply for building permits."

Contrary to plaintiffs' claims in the trial court and on appeal, there is absolutely no indication in our previous opinion that the resulting land division needed to be performed in a fashion that preserved plaintiffs' ability to obtain a building permit for the five-acre parcels that remained in their possession, especially given our holding that defendant was entitled to ownership of the central 10-acres. As defendant noted in the trial court and on appeal, plaintiffs still retained the opportunity to apply for a variance if they wished to obtain a building permit, see MCL 125.3603; MCL 125.3604; Holly Township Ordinances, § 32-64(d), and plaintiffs provide no factual basis for their conclusion that the Township of Holly "has never issued a building permit for improperly divided land and they never will." Again, there is nothing in our previous opinion indicating that a "proper" division required all resulting parcels to be buildable, and we decline to read such a requirement into our prior decision.

## III. SUMMARY DISPOSITION

Next, plaintiffs argue that the trial court erred in granting summary disposition in favor of defendant. We disagree.

### A. STANDARD OF REVIEW

Defendant moved for summary disposition pursuant to MCR 2.116(C)(8) and (C)(10), but is apparent from the substance of its motion that it was also moving for summary disposition pursuant to MCR 2.116(C)(7) on the basis of governmental immunity. The trial court stated that was considering defendant's motion under MCR 2.116(C)(8) and (C)(10), but it also implicitly granted summary disposition pursuant to MCR 2.116(C)(7), finding that plaintiffs two of plaintiffs' claims were barred by governmental immunity. Thus, we will consider the motion as being granted under MCR 2.116(C)(7), (8), and (10). See *Johnston v City of Livonia*, 177 Mich App 200, 208; 441 NW2d 41 (1989) ("[T]his Court is not bound by plaintiff's choice of labels for her action because this would exalt form over substance.").

This Court reviews *de novo* a trial court's grant or denial of summary disposition as well as "[t]he applicability of governmental immunity and the statutory exceptions to immunity." *Moraccini v Sterling Hts*, 296 Mich App 387, 391; 822 NW2d 799 (2012). A trial court may

grant summary disposition under MCR 2.116(C)(7) when "[e]ntry of judgment, dismissal of the action, or other relief is appropriate because of . . . immunity granted by law." MCR 2.116(C)(7); *Moraccini*, 296 Mich App at 391. "In reviewing a motion for summary disposition under MCR 2.116(C)(7), a court considers the affidavits, pleadings, and other documentary evidence presented by the parties and accepts the plaintiff's well-pleaded allegations as true, except those contradicted by documentary evidence." *McLean v Dearborn*, 302 Mich App 68, 72-73; 836 NW2d 916 (2013). To survive a motion for summary disposition brought under MCR 2.116(C)(7), a plaintiff must allege facts that "warrant[] the application of an exception to governmental immunity." *Plunkett v Dep't of Transp*, 286 Mich App 168, 180; 779 NW2d 263 (2009). "If no [material] facts are in dispute, or if reasonable minds could not differ regarding the legal effect of the facts, the question whether the claim is barred by governmental immunity is an issue of law." *Willett v Charter Twp of Waterford*, 271 Mich App 38, 45; 718 NW2d 386 (2006) (internal quotation marks and citation omitted).

"A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed in a light most favorable" to the nonmoving party. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). Motions under MCR 2.116(C)(8) are granted only when the claims are so unenforceable "as a matter of law that no factual development could possibly justify recovery." *Id.* (quotation marks and citation omitted).

When reviewing a motion for summary disposition pursuant to MCR 2.116(C)(10), this Court may only consider, in the light most favorable to the party opposing the motion, the evidence that was before the trial court, which consists of "the 'affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties.' " *Calhoun Co v Blue Cross Blue Shield Michigan*, 297 Mich App 1, 11; 824 NW2d 202 (2012), quoting MCR 2.116(G)(5). Under MCR 2.116(C)(10), "[s]ummary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

## B. ANALYSIS

In the trial court, the parties agreed that the only remaining claims under plaintiffs' amended complaint, after our previous opinion in this matter, were Count III (Violation of the Land Division Act), Count V (Wrongful Eviction and Forcible Entry and Detainer), and Count VII (Constructive Eviction and Trespass). On appeal, plaintiffs first argue that summary disposition of their violation of the Land Division Act claim was improper because plaintiffs properly pleaded and proved a violation of the act. As we held *supra*, the trial court correctly ruled that there was no such violation. Therefore, the trial court properly dismissed this claim.

Secondly, plaintiffs' sole argument regarding the trial court's dismissal of their forcible entry and detainer and constructive eviction and trespass claims is that summary disposition was improper under MCR 2.116(C)(10) because governmental immunity did not shield the township from liability for those intentional torts.

Under the Michigan governmental immunity act, MCL 691.1401 *et seq.*, governmental agencies have the benefit of extensive immunity from tort liability while they are "engaged in the exercise or discharge of a governmental function." MCL 691.1407; see *Plunkett*, 286 Mich App at 181 (stating same). "[W]hen a party files suit against a governmental agency, it is the burden of that party to plead his or her claim in avoidance of governmental immunity." *Hannay v Dep't of Transp*, 497 Mich 45, 58; 860 NW2d 67 (2014) (quotation marks and citation omitted).

Plaintiffs rely on *Odom v Wayne Co*, 482 Mich 459; 760 NW2d 217 (2008), in support of their position that defendants' acts are not protected by governmental immunity. However, *Odom* specifically addressed "the affirmative defense of *individual* governmental immunity" and, as a result, specifically focused on the circumstances under which "governmental *employees* enjoy qualified immunity for intentional torts." *Odom*, 482 Mich at 461, 479-480 (emphasis added). Likewise, the *Odom* Court specifically held, "Under the *Ross* [*v Consumers Power Co*, 420 Mich 567, 595; 363 NW2d 641 (1984),] test, *governmental employees* enjoy qualified immunity for intentional torts. A governmental employee must raise governmental immunity as an affirmative defense . . . ." *Id*. at 461, 479-480 (emphasis added). Plaintiffs' claims include no allegations against specific governmental employees, and plaintiffs named no individual governmental employees as defendants throughout the proceedings in the trial court. Thus, plaintiffs' reliance on *Odom* is misplaced because the affirmative defense of individual governmental immunity is not applicable here.

Notably, the *Odom* Court expressly distinguished its holding and application of the *Ross* test from cases that involve "governmental agencies . . . rather than individual governmental employees," such as *Smith v Dep't of Pub Health*, 428 Mich 540; 410 NW2d 749 (1987). *Odom*, 482 Mich at 472 n 31. In *Smith*, the Michigan Supreme Court established that there is no exception to governmental immunity for intentional torts with regard to governmental agencies themselves. See *Smith*, 428 Mich at 593 ("We agree with the reasoning of the Court of Claims; no intentional tort exception exists, and an act "may be [the] exercise or discharge of a governmental function even though it results in an intentional tort."); *id*. at 603 ("[T]he Legislature did not intend to exclude intentional torts when committed by governmental agencies in the course of a governmental function."); *id*. at 611 ("[I]ntentional torts are immune if committed within the scope of a governmental function; however, the intentional use or misuse of a badge of governmental authority for a purpose unauthorized by law is not the exercise of a governmental function."). See also *Harrison v Director of Dep't of Corrections*, 194 Mich App 446, 450; 487 NW2d 799 (1992).

"Accordingly, any plaintiff who seeks to assert an intentional tort claim against a governmental defendant must demonstrate that the defendant committed the alleged tort outside the exercise or discharge of a governmental function." *Genesee Co Drain Comm'r v Genesee Co*, 309 Mich App 317, 328; 869 NW2d 635 (2015). "Governmental function" is defined as

> [A]n activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law. Governmental function includes an activity performed on public or private property by a sworn law enforcement officer within the scope of the law enforcement officer's authority, as directed or assigned by his or her public employer for the purpose of public safety. [MCL 691.1401(b).]

A plaintiff bringing an intentional tort claim has a very difficult burden to meet because the definition of "governmental function" under MCL 691.1401(b) "is to be broadly applied and requires only that there be *some* constitutional, statutory or other legal basis for the activity in which the governmental agency was engaged," and this Court "look[s] to the general activity involved rather than the specific conduct engaged in when the alleged injury occurred." *Genesee Co Drain Comm'r v Genesee Co*, 309 Mich App at 327-328 (quotation marks and citation omitted).

Plaintiffs did not allege or argue in the trial court, nor do they argue on appeal, that the general activities at issue here were outside the exercise or discharge of a governmental function. *See id*. Instead, in the trial court, they argued only in response to defendant's motion for summary disposition that "[t]here is no government immunity for acts of Intentional Tort." On appeal, they focus exclusively on language in *Odom*, which, again, is not applicable here. While they argue that defendant and its agents engaged in conduct that was malicious, corrupt, outrageous, or in "wanton or reckless disregard for the rights of another," *Odom*, 482 Mich at 461, they provide no argument and cite no authority indicating that defendant was not participating in the exercise or discharge of a governmental function when it performed the acts. "This Court will not search for authority to sustain or reject a party's position." *Guardiola v Oakwood Hosp*, 200 Mich App 524, 536; 504 NW2d 701 (1993).

Nevertheless, we "look to the general activity involved rather than the specific conduct engaged in when the alleged injury occurred." *Ward*, 287 Mich App at 84. Our review of the allegations in plaintiffs' amended complaint and the documentary evidence attached to defendant's motion for summary disposition, which was unrebutted by plaintiffs in the trial court, reveals that defendant's acts were all committed in the process of acquiring, securing, and protecting municipally owned property,[3] which constitutes a valid governmental function expressly or impliedly authorized by legal authority.[4] See MCL 691.1401(b); see also, e.g., Const 1963, art 7, § 23; MCL 41.2; MCL 42.14. Thus, the trial court properly held that plaintiffs failed to demonstrate that defendant committed "the alleged tort[s] outside the exercise or discharge of a governmental function," *Genessee Co*, 309 Mich App at 327, and, therefore, failed to plead their claims in avoidance of governmental immunity, *Hannay*, 497 Mich at 58.

---

[3] We note that plaintiffs make no argument that defendant's actions were committed during the operation of a proprietary function. See MCL 691.1413.

[4] Plaintiffs' allegations in their brief on appeal regarding defendant's alleged act of discontinuing the electrical power to the five-acre parcels is not mentioned in plaintiffs' first or amended complaint. Plaintiffs briefly mentioned this argument in their motion for summary disposition pursuant to MCR 2.116(C)(10), but they provided no documentary evidence, and cited no documentary evidence already in the record, in support of this allegation, as required under MCR 2.116(G)(3). Additionally, plaintiffs never argued in response to defendant's motion for summary disposition that any acts committed by defendant with regard to the electrical power were outside the exercise or discharge of a governmental function. Accordingly, we will not consider this allegation on appeal in determining whether plaintiffs pleaded their claims in avoidance of defendant's governmental immunity. See *Hannay*, 497 Mich at 58.

## IV. CONCLUSION

Because defendant's proposed land division does not violate the Land Division Act and local ordinances, and the division is consistent with dictates of this Court in our previous opinion, the trial court did not err in adopting defendant's proposed land division. Because the land division was proper, the trial court properly dismissed Count III of plaintiffs' amended complaint.

Summary disposition of plaintiffs' claims under Counts V and VII of their amended complaint was proper because plaintiffs failed to properly plead these claims in avoidance of defendant's governmental immunity.

Affirmed.

/s/ Kathleen Jansen
/s/ William B. Murphy
/s/ Michael J. Riordan