# STATE OF MICHIGAN

# COURT OF APPEALS

---

ELIZABETH BELLINGER, by Next Friend,
JAMIE BELLINGER,

        Plaintiff-Appellee,

v

JULIE KRAM,

        Defendant-Appellant,

and

LAKEVILLE MEMORIAL HIGH and
LAKEVILLE COMMUNITY SCHOOLS,

        Defendants.

FOR PUBLICATION
May 25, 2017
9:00 a.m.

No. 331199
Genesee Circuit Court
LC No. 14-103877-NO

---

Before: M. J. KELLY, P.J., and BECKERING and SHAPIRO, JJ.

SHAPIRO, J.

    Defendant, Julie Kram, appeals as of right from the order of the trial court denying her motion for summary disposition under MCR 2.116(C)(7) (governmental immunity).[1] We affirm.

## I. FACTUAL BACKGROUND

    Plaintiff, Elizabeth Bellinger, brought this lawsuit after she sustained severe injuries to her hand while operating a table saw during a woodshop class that defendant taught at Lakeville

---

[1] Defendant-Kram, along with the school-defendants filed a joint motion for summary disposition under MCR 2.116(C)(7) (governmental immunity), MCR 2.116(C)(8) (failure to state a claim), and MCR 2.116(C)(10) (no genuine issue of material fact). The trial court granted the motion as to the school-defendants and denied the motion as to Kram. The trial court's decision did not specify which sub-rule of MCR 2.116(C) it was basing its respective rulings on, but the substance of its opinion indicates that both the partial grant and the partial denial were under sub-rule (C)(7). Plaintiff has not appealed the grant of summary disposition to the school-defendants, so all references to defendant in this opinion will concern defendant-Kram.

-1-

High School.  Plaintiff alleged that her injuries were caused by defendant's actions in removing a blade guard from the table saw, encouraging students to operate the table saw without the blade guard, and on the day of her injury, specifically directing plaintiff to make a cut on the table saw that she had never before attempted without any supervision and without the presence of the blade guard.[2]  According to plaintiff's deposition testimony, defendant actively encouraged students not to use the blade guard telling them that using it was not consistent with how table saw operation is done in "real life" and that the blade guard is only put on the table saw when the insurance company came for inspections.[3]  Defendant did not dispute that she was the person who removed the blade guard and that she instructed students that safe operation of the table saw did not require the guard, only the use of a push stick and a push block.[4]  She stated her view that use of the blade guard presented its own safety problems because it had the potential to lull users into a false sense of security and to potentially obstruct their vision of the work area.  Defendant denied making statements about only putting the guard on when insurance companies conducted inspections.

According to plaintiff, on the day of the accident, defendant asked her to help another student by making an angled cut on the table saw.  At the time, the blade guard was not on the saw, and defendant acknowledged that she would have been the last one to remove it.  Plaintiff had never made an angled cut before, and she stated that she initially declined defendant's request and only agreed after what she described as defendant's repeated requests.  Even after plaintiff initially failed to properly make the cut, defendant simply made an adjustment to the saw, told plaintiff to try again, and then left plaintiff unsupervised.  During plaintiff's second attempt, the table saw experienced what the parties refer to as a "kickback."  While the cause of kickbacks generally and specifically the cause of the kickback that occurred on the day of plaintiff's injury are matters of dispute, both parties generally agree that a kickback is an incident that occurs when the work-piece is propelled back towards the table saw operator, often at very high speeds, causing the potential for injury both due to the possibility of the user's hand slipping from the work-piece and contacting the saw blade, and due to the possibility of the user

---

[2] Pursuant to photographs and testimony in the record, the blade guard is a square covering designed to hover directly over the saw blade's surface at varying heights supported by adjacent mounts that connected the guard to supports away from the table saw's surface.  The blade guard operating manual states that to be effective it must be engaging the work-piece during the cut.

[3] Plaintiff also testified that defendant generally took a lackadaisical approach to safety in the classroom and recalled instances where defendant and the school's principal got into a disagreement about the extent to which protective eyewear should be worn in the classroom and where defendant simply encouraged students to memorize the answers for the safety test while giving them the impression that those answers were not reflective of how things are done in "real life."

[4] Pursuant to photographs and testimony in the record, a push block is a thick piece of plastic with a handle on top, and a push stick is a long wooden pole with a notch on the end designed to guide the work-piece through the saw while the push block is used to keep adequate downward pressure on the work-piece.

being struck by the propelled work-piece. In this case, the kickback resulted in plaintiff's hand coming into contact with the saw blade resulting in significant injury.

Defendant maintains that the kickback occurred because plaintiff removed one of her hands from either the push block or the push stick. In support of this position, defendant points to the written statement and accompanying affidavit of the student for whom plaintiff was performing the cut. In that statement, the student described the kickback as beginning after plaintiff "reached around to grab the [work-piece]." However, plaintiff's own deposition testimony disputes this account. When asked whether she was pushing both down and forward on the work-piece at the inception of the kickback, plaintiff responded in the affirmative. Plaintiff also presented the expert affidavit of a professional engineer who averred that no one, whether a novice or an expert, should operate a table saw without a blade guard. The expert explained in the affidavit that kickbacks can occur regardless of an operator's level of care, even with the use of a push block and a push stick, and that the only sure way to prevent kickbacks is by using a blade guard.

Following the accident, defendant filled out two accident reports. In the first, which was a narrative of events leading up to the accident, she wrote, "I checked the fence and blade height and angle. All was as it should be. . . . [Plaintiff] was to put the guard on before she made the cut." The second report required defendant to respond to various questions about whether proper safety equipment and procedures were being used and whether the accident was the result of any safety violations, and in that report defendant consistently wrote, "Student had not put guard back on machine after set-up." Also in that report, in response to a question about whether plaintiff had been previously informed of a safety rule that "should have prevented this accident" defendant wrote, "Yes, student was informed all students are taught to never use machine without all the guards in place."

## II. STANDARD OF REVIEW

We review the trial court's denial of defendant's motion for summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). In reviewing a motion for summary disposition under MCR 2.116(C)(7), a court must review the facts in the complaint to determine if they "justify a finding that recovery in tort is not barred by governmental immunity." *Harrison v Dir of Dep't of Corrections*, 194 Mich App 446, 449; 487 NW2d 799 (1992). All evidence that is submitted by the parties must be construed in favor of the nonmoving party to determine whether there exists a genuine issue of material fact. *Skinner v Square D Co*, 445 Mich 153, 161-162; 516 NW2d 475 (1994). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v GMC*, 469 Mich 177, 183; 665 NW2d 468 (2003).

## III. ANALYSIS

MCL 691.1407(2) provides qualified government immunity from tort liability to government employees acting within the scope of their authority and engaging in the exercise of a government function provided the employee's "conduct does not amount to gross negligence that is the proximate cause of the injury or damage." Therefore, in order to have survived

defendant's motion for summary disposition, plaintiff was required to show that there was both an issue of material fact on the element of gross negligence and on the element of proximate cause.

## A.  GROSS NEGLIGENCE

"[G]ross negligence" is statutorily defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). Grossly negligent conduct must be conduct that is "substantially more than negligent." *Maiden*, 461 Mich at 121. Generally, allegations or evidence of inaction or claims that a defendant could have taken additional precautions are insufficient. See *Tarlea v Crabtree*, 263 Mich App 80, 84-86, 90-92; 687 NW2d 333 (2004) (requiring students to exercise in high temperatures and high humidity was not gross negligence where the defendants required student athletes to obtain a physical examination before participation, provided student athletes with adequate water and food, and allowed breaks). However, evidence that a defendant engaged in affirmative actions contrary to professionally accepted standards and then sought to cover up those actions does establish gross negligence. See *Maiden*, 461 Mich at 128-130 (performing an autopsy without the requisite anatomical knowledge and then attempting to conceal the results of that autopsy from the police and prosecutor constituted gross negligence). We have previously characterized gross negligence "as a willful disregard of safety measures and a singular disregard for substantial risks." *Oliver v Smith*, 290 Mich App 678, 685; 810 NW2d 57 (2010).

In this case, the evidence viewed in a light most favorable to plaintiff suggests that defendant did far more than simply fail to take additional precautions. There is evidence that defendant took active steps to remove and discourage use of the safety guard designed to prevent precisely this type of injury and then pressured plaintiff to use the saw in this unsafe condition to perform a type of cut that she had never before performed.

Moreover, plaintiff's expert engineer averred that not even an expert operator should perform work on a table saw without a blade guard. This expert further averred that the safety devices defendant considered adequate alternatives were insufficient to protect against injury, and that, without a blade guard, serious injury could occur despite an operator's level of care. Defendant has not presented any evidence to counter these conclusions. Plaintiff also presented evidence that defendant created a classroom atmosphere wherein safety was considered antithetical to "real life," and wherein the blade guard was simply treated as a device to appease the insurance company. Concerning defendant's conduct on the day of the accident, plaintiff testified that defendant persistently pressured her to make a specific cut on the table saw that she had never before made without any supervision all the while instilling in plaintiff the false belief that she was not in danger. This is evidence of a willful disregard for safety measures and a substantial disregard for known risks.[5]

---

[5] While defendant vigorously contests plaintiff's characterization of the evidence, "summary disposition is precluded in cases in which reasonable jurors could honestly have reached

Additionally, plaintiff presented unrebutted evidence that defendant sought to cover up her actions. In the incident reports she filled out in the accident's immediate aftermath, defendant blamed plaintiff for the blade guard's absence and stated that plaintiff had been instructed to never use the saw without the blade guard. Not only do these statements evidence defendant's attempt to cover up her own failure to ensure the blade guard was on the saw, but they contradict defendant's deposition testimony, wherein she testified that she told students use of the blade guard was optional, and they contradict her theory on appeal that the blade guard presented its own safety problems. A jury could certainly conclude from this evidence that defendant had guilty knowledge, i.e., she knew the guards should have been on and that she was primarily concerned with deflecting blame rather than accurately reporting what occurred. Sufficient evidence existed to show that defendant, through her affirmative actions, showed a willful disregard for professionally accepted safety standards, displayed a singular disregard for substantial risks on the day of the injury, and sought to cover up her actions in the immediate aftermath. This is sufficient to create a factual dispute on the issue of gross negligence.

## B. PROXIMATE CAUSE

Case-law has interpreted the phrase "the proximate cause" in MCL 691.1407(2)(c) "as meaning the one most immediate, efficient, and direct cause preceding an injury." *Robinson v City of Detroit*, 462 Mich 439, 458-459; 613 NW2d 307 (2000). In the present case, it appears uncontested that plaintiff was injured as a result of a kickback that occurred while she was attempting to use the table saw for a fellow student without the presence of the blade guard. Defendant contends on the basis of the written statement of the student for whom the cut was being performed that the kickback only occurred because plaintiff reached around to grab the work-piece on the trailing end, thereby removing one of her hands from either the push stick or the push block. However, this contention is rebutted by plaintiff's own deposition testimony that the kickback began while she was pushing both down and forward on the work-piece. Plaintiff's explanation is supported by the affidavit of her expert engineer who averred that kickbacks can occur regardless of an operator's level of care and that the only way to prevent their occurrence is the use of a blade guard. Again defendant has not presented any evidence to counter these conclusions.

Accepting the contentions of plaintiff's expert and her own deposition testimony as true, the one most immediate, efficient and direct cause of the kickback and resulting injury was the absence of the blade guard. And even discounting plaintiff's evidence about defendant actively discouraging students from using the blade guard, suggesting to them that in "real life" the blade guard would not be used, and inferring that the blade guard's purpose was simply to appease the insurance company, defendant has essentially conceded that she was the cause of the blade guard's absence. She acknowledged that she would have been the last one to remove the blade guard. And while she vigorously disputes plaintiff's testimony about her overall approach to classroom safety and about her references to insurance company inspections, defendant testified that she instructed students that use of the blade guard was optional and that she told her students that operation of the table saw without the guard did not make the use of the saw any less safe.

different conclusions with regard to whether the defendant's conduct amounted to gross negligence." *Vermilya v Dunham*, 195 Mich App 79, 83; 489 NW2d 496 (1992).

Therefore, there was sufficient evidence for a trier of fact to determine that defendant's actions were the proximate cause of the blade guard's absence and of plaintiff's injury.

## IV.  CONCLUSION

Plaintiff presented sufficient evidence to create a genuine issue of material fact on both the elements of gross negligence and proximate cause.  Therefore, the trial court did not err in denying defendant's motion for summary disposition.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Michael J. Kelly
/s/ Jane M. Beckering